# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1294
_____

United States of America,

*Plaintiff - Appellee,*

v.

Neil E. Havlik,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 21, 2012
Filed: March 28, 2013

_____

Before RILEY, Chief Judge, SMITH and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Neil E. Havlik of receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (a)(4)(B). The district

court[1] sentenced him to 144 months' imprisonment, to be followed by 15 years' supervised release. Havlik appeals the conviction on several grounds, and we affirm.

I.

The Federal Bureau of Investigation learned of Havlik's possible involvement with child pornography in 2005 during a large-scale undercover investigation of commercial child pornography websites. The Bureau forwarded Havlik's name to the United States Postal Inspection Service. In 2007, as part of a mail-based testing program, Postal Inspector Thomas Henderson sent Havlik a solicitation letter in which Henderson posed as a distributor of child pornography and invited Havlik to request a catalog. Havlik mailed a response to the solicitation in which he requested catalogs and asserted that he was "not a law enforcement officer." After Havlik received a catalog, he returned an order form for the purchase of three child pornography videos and enclosed a personal check as payment.

Postal inspectors arranged for a controlled delivery of the child pornography videos to Havlik's local post office and secured a search warrant for Havlik's residence. After Havlik returned home with the contraband, officers entered the property and ordered Havlik to the ground. When Havlik did not comply, an officer forced him to the ground with a "bladed forearm strike" and handcuffed him. An emergency medical technician then examined Havlik, who was complaining of chest pain. During the execution of the warrant, officers subdued Havlik's large dogs to secure the area.

Three law enforcement agents attempted to read Havlik the rights prescribed by *Miranda v. Arizona*, 384 U.S. 436 (1966). Havlik, however, repeatedly asserted

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

that he did not understand why the officers were reading the rights to him if he was not under arrest, questioned the officers' right to be on his property, and complained of chest pain. When an officer informed Havlik of his right to counsel, Havlik replied: "I don't have a lawyer. I guess I need to get one, don't I?" The officer continued by advising Havlik that an attorney would be appointed for him if he could not afford one. Havlik responded, "I guess you better get me a lawyer then." The officer continued reading the *Miranda* rights, but eventually stopped when Havlik's health complaints prompted the officers to summon medical personnel. After the medical examination, a postal inspector read Havlik the *Miranda* rights, obtained Havlik's waiver of those rights, and began to interview him. Havlik then made inculpatory statements.

In their search of Havlik's property, officers seized the three VHS tapes that Havlik had received during the controlled delivery, as well as other VHS tapes containing 491 images of child pornography and 24 video clips totaling 57 minutes of child pornography. These images and video clips had been copied and downloaded from the Internet through Havlik's WebTV system.

A grand jury returned a three-count indictment against Havlik that included one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Havlik moved to suppress statements he made during the execution of the search warrants, and to dismiss all charges on the basis of entrapment. The court denied the motions, and the case proceeded to trial. During trial, Havlik moved for judgment of acquittal, arguing among other things that there was insufficient evidence to prove the jurisdictional element of the child pornography offenses. The court denied the motion, and a jury convicted Havlik on both child pornography counts. Havlik was acquitted on a third count that charged him with witness tampering. The district court sentenced Havlik to 144 months' imprisonment, to be followed by 15 years of supervised release. Havlik appeals.

II.

A.

Havlik appeals the district court's denial of his motion to suppress statements on two grounds. The most substantial is Havlik's claim that the interrogating officers violated the rule of *Edwards v. Arizona*, 451 U.S. 477 (1981), by continuing to question him after he invoked his right to counsel. When a suspect requests counsel during an interrogation, police must cease questioning until counsel has been made available or the suspect reinitiates communication with the police. *Id.* at 484-85.

The Supreme Court clarified the *Edwards* rule in *Davis v. United States*, 512 U.S. 452 (1994), saying that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.* at 459. To implicate *Edwards*, a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* There is no requirement that an officer must ask clarifying questions when a suspect makes an ambiguous statement regarding counsel. *Id.* at 461. Applying these principles, the Court in *Davis* held the statement "[m]aybe I should talk to a lawyer" was equivocal, and not an invocation of the right to counsel for purposes of *Miranda* and *Edwards*. *Id.* at 462.

Havlik claims that he twice invoked the right to counsel with sufficient clarity to implicate the *Edwards* rule. In response to an officer's statement that he had the right to counsel, Havlik responded: "I don't have a lawyer. I guess I need to get one, don't I?" This question is insufficient to trigger an obligation to cease questioning. In *Dormire v. Wilkinson*, 249 F.3d 801 (8th Cir. 2001), we held that a similar question—"Could I call my lawyer?"—was ambiguous, because a reasonable officer

-4-

could have understood the suspect to be "merely inquiring whether he had the right to call a lawyer." *Id.* at 805. Similarly here, a reasonable officer could have understood Havlik's response to be a request for advice about whether to seek counsel, rather than a request for counsel. *See Mueller v. Angelone*, 181 F.3d 557, 573-74 (4th Cir. 1999).

Havlik also contends that he invoked his right to counsel when he said, "I guess you better get me a lawyer then." The phrase "I guess" is "used to indicate that although one thinks or supposes something, it is without any great conviction or strength of feeling." *The New Oxford American Dictionary* 755 (Elizabeth J. Jewell & Frank Abate, eds. 2001). As a transitive verb, to "guess" means to "estimate or suppose (something) without sufficient information to be sure of being correct." *Id.* In other contexts, the phrase "I guess" has been viewed as equivocal. *E.g.*, *Culkin v. Purkett*, 45 F.3d 1229, 1233 (8th Cir. 1995) (describing a witness's "I guess" response to a court's question as "equivocal"); *United States v. Nelson*, 450 F.3d 1201, 1212 (10th Cir. 2006) (describing the phrase "I guess I'm ready to go to jail then" as "at best an ambiguous or equivocal statement" in applying *Davis* to an alleged invocation of the right to remain silent); *United States v. Wiggins*, 131 F.3d 1440, 1442 (11th Cir. 1997) (describing the phrase "I plead guilty I guess" as "equivocal"); *cf. Burket v. Angelone*, 208 F.3d 172, 197-98 (4th Cir. 2000) (concluding that "I think I need a lawyer" is not an unequivocal request for counsel). Havlik's statement is thus not materially different from the statement "[m]aybe I should talk to a lawyer," which the Supreme Court held ambiguous in *Davis*. 512 U.S. at 462.

In sum, Havlik's statements to the interrogating officers were not an unequivocal or unambiguous request for counsel, and the police were not required to ask clarifying questions. Accordingly, there was no violation of the *Edwards* rule.

Second, Havlik makes two related contentions about the voluntariness of his admissions. He contends that his waiver of rights under *Miranda* was involuntary and the product of police coercion, such that his admissions should be suppressed. *See Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986). And he maintains that even if there was a valid waiver of rights, his statements during the search were nonetheless involuntary, such that they should have been suppressed based on a violation of the Due Process Clause. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973). We consider the totality of the circumstances, including the conduct of the officers and the characteristics of the accused, in determining whether a suspect's waiver or statements were the product of an overborne will. *Wilson v. Lawrence Cnty.*, 260 F.3d 946, 952 (8th Cir. 2001). The inquiry is essentially the same for both the *Miranda* waiver and the inculpatory statements. *Connelly*, 479 U.S. at 170.

The facts surrounding Havlik's waiver and statements demonstrate voluntariness. Havlik points to the number of officers involved in the search, the injury he suffered while being secured, and the officers' persistence in reading his rights under *Miranda*. But the government showed that the sprawling layout of Havlik's property, the threats posed by the terrain, and the presence of large dogs required a significant team of officers to execute the search warrants. Despite the presence of a team of officers on the property, only three of those officers participated in questioning Havlik. *See Simmons v. Bowersox*, 235 F.3d 1124, 1132-33 (8th Cir. 2001). The government also proved that Havlik's chest injury did not undermine the voluntariness of his waiver or admissions. Three different medical specialists evaluated Havlik, and he signed the *Miranda* waiver after the last specialist concluded that he had "calmed down" and was not seriously injured. The officers were justified in their persistence, because Havlik interrupted their initial inquiries while asserting a mistaken belief that *Miranda* applied only after a formal arrest. Havlik never demonstrated an inability to understand the substance of the warnings.

-6-

We thus conclude that Havlik voluntarily waived his rights under *Miranda*, and that his statements to the officers were voluntary.

## B.

Although he did not request a jury instruction on entrapment, Havlik now argues that the evidence was insufficient to convict him, because the government did not prove beyond a reasonable doubt that he was not entrapped. Entrapment is an affirmative defense that requires a defendant to present evidence that a government agent "implant[ed] in an innocent person's mind the disposition to commit a criminal act." *Jacobson v. United States*, 503 U.S 540, 548 (1992). Only then does the burden shift to the prosecution to "prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." *Id.* at 549. A defendant who requests an entrapment instruction is entitled to have it given "whenever there is sufficient evidence from which a reasonable jury could find entrapment." *Mathews v. United States*, 485 U.S. 58, 62 (1988). But Havlik seeks to challenge the sufficiency of the evidence on the basis of an affirmative defense without having objected to the lack of a jury instruction on that defense at trial. So we review for plain error and "consider whether the absence of a jury instruction on entrapment was an obvious error that affected the defendant's substantial rights and seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Wilder*, 597 F.3d 936, 944 (8th Cir. 2010).

Havlik contends that the government implanted the disposition to obtain child pornography in his mind by subjecting him "to a bombardment of e-mails containing pornography." Yet the Postal Inspection Service did not send Havlik a single e-mail prior to Inspector Henderson's e-mail that confirmed *Havlik's* mail order for child pornography videos. During the investigation, Henderson did mail Havlik one solicitation letter inviting him to request a catalog of child pornography. Havlik promptly requested a catalog, and Henderson replied to that request. "Where agents

simply offer a subject the opportunity to commit a crime, and the subject promptly avails himself of the criminal opportunity, an entrapment defense typically does not warrant a jury instruction." *Id.* at 945.

The government also introduced evidence of Havlik's predisposition. The FBI discovered Havlik's name in customer records of a company that processed credit cards for commercial child pornography websites. The search of Havlik's property produced multiple VHS tapes containing child pornography, which Havlik acquired from sources other than the government. When a defendant exhibits such predisposition to commit the crime, the district court need not instruct the jury on entrapment. *United States v. Cooke*, 675 F.3d 1153, 1156 (8th Cir. 2012). For these reasons, there was no plain error in declining to instruct the jury on entrapment.

Havlik next challenges the sufficiency of the evidence to prove the jurisdictional element of the child pornography offenses. On the receipt count, the jurisdictional element is satisfied if the government proves that a "visual depiction" of child pornography was "receive[d] . . . using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce." 18 U.S.C. § 2252(a)(2). The government presented evidence that Havlik mailed an order form for the VHS tapes from Arkansas to Indianapolis, Indiana, where Inspector Henderson was based. Henderson then sent the tapes from Indiana to another postal inspector in Houston, Texas, and the second inspector delivered them to Havlik's post office in Arkansas. Havlik argues that because he "received" the tapes from his local post office, the tapes "were not shipped to him by mail or otherwise carried in interstate commerce from Indiana to him." But the statute does not require proof that the child pornography was shipped to him by mail; it is enough that he received material "that has been mailed" or "has been . . . transported in . . . interstate . . . commerce." *Id.* The government presented evidence that after Havlik ordered the tapes, they were mailed interstate from Indiana to Texas, and then transported from Texas to Arkansas. That was

sufficient to satisfy the jurisdictional element of the statute. *See United States v. Acosta*, 421 F.3d 1195, 1197-98 (11th Cir. 2005); *United States v. Moore*, 916 F.2d 1131, 1138 (6th Cir. 1990); *United States v. Dornhofer*, 859 F.2d 1195, 1197-98 (4th Cir. 1988).

On the possession count, the jurisdictional element of the statute is met if the defendant "knowingly possesses" child pornography that has been "shipped or transported using any means or facility of interstate . . . commerce." 18 U.S.C. § 2252(a)(4)(B). The government presented evidence that Havlik downloaded child pornography from the Internet using a WebTV system. The Internet is an instrumentality and channel of interstate commerce. *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007). A reasonable trier of fact therefore could find that Havlik possessed child pornography that had been transported using a means or facility of interstate commerce.

\* \* \*

The judgment of the district court is affirmed. We decline to address Havlik's claim of ineffective assistance of counsel, which should be raised, if Havlik so desires, in a collateral proceeding under 28 U.S.C. § 2255. *See United States v. Bauer*, 626 F.3d 1004, 1009 (8th Cir. 2010).

———————————————