# United States Court of Appeals
## For the First Circuit

No. 11-2260

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID OQUENDO-RIVAS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Selya, Circuit Judges.

Anita Hill-Adames and Anita Hill Law Office, on brief for appellant.
John A. Mathews II, Assistant United States Attorney, Rosa Emilia Rodríquez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, on brief for appellee.

April 18, 2014

**TORRUELLA, Circuit Judge.** David Oquendo-Rivas ("Oquendo") appeals from the denial of his motion to suppress a series of inculpatory statements. First, he seeks suppression of a statement made to his arresting officer, arguing that he was questioned while in formal custody but prior to the receipt of Miranda warnings. Second, he seeks suppression of all statements made during his formal interrogation, arguing that questioning resumed impermissibly soon after his initial refusal to make a statement and continued even after his unambiguous request for counsel. None of these theories passes muster. Consequently, we affirm the denial of the motion to suppress.

## I. Background

### A. Arrest and Interrogation[1]

A shootout at La Tómbola, a bar near Toa Baja, Puerto Rico, left several patrons dead. In its aftermath, rumors led officers from the Puerto Rico Police Department ("PRPD") to a nearby home, where several men involved in the murders were thought to be hiding. Arriving at the residence, officers observed three men standing in its fenced-in yard. Startled by the officers, one man -- later identified as Oquendo -- lifted his shirt to reveal a firearm in his waistband. All three men then fled. One, exiting

---

[1] We derive the facts, in large part, from testimony given by the arresting and interrogating officers. This testimony was found credible by the district court judge and is not seriously contested by Oquendo on appeal.

the yard, successfully evaded the ensuing pursuit; he has never been identified. The other two, Oquendo and his co-defendant, Christian Ortiz-Rivera ("Ortiz"), ran up an exterior staircase and into the home's second-story interior. The officers gave chase.

Entering the home's upper level, Officer Rodríguez-Negrón ("Officer Rodríguez") observed Oquendo toss a handgun out of the window. Soon after, Officer Rodríguez and Officer Roberto Cruz grabbed Oquendo and restrained him on the floor. While demobilizing Oquendo, they heard a fellow officer call out from below, indicating that he had possession of the thrown weapon. Officer Rodríguez then entered an adjoining bedroom, where he witnessed Ortiz attempting to hide two more firearms in a laundry basket. One of these guns had an obliterated serial number. Subsequent to detaining both men, but before their formal arrest, Officer Rodríguez asked if they were licensed to possess firearms. Oquendo and Ortiz both answered, "no."

After being placed under formal arrest and verbally read his Miranda rights,[2] Oquendo was taken to the police station in Bayamón, Puerto Rico for questioning. There, Officer Rodríguez provided him with a Spanish-language Miranda waiver form. This

_____

[2] The arresting officers testified that, after receiving this verbal warning, Oquendo and Ortiz made several voluntary and unsolicited statements. Some time during these events, a man also arrived at the home claiming to be Oquendo and Ortiz's lawyer. Because the man did not know the names of his clients, or who had called to request his presence, he was denied access.

-3-

form set forth, in a bullet-point list, the nature of Oquendo's Miranda rights. Under that bulleted description, the form provided space for Oquendo to waive his rights by consenting to make a statement outside the presence of a lawyer, if he so desired. After reviewing the form, Oquendo indicated that he did not wish to make a statement. No questions were asked and, after signing and dating the form, Officer Rodríguez left the room.

Approximately twenty minutes later, Agent Julio Torres ("Agent Torres") from the federal Alcohol, Tobacco, Firearms and Explosives Bureau ("ATF") entered Oquendo's interrogation room. Agent Torres handed Oquendo another blank copy of the Spanish-language Miranda waiver form. After reviewing this duplicate form, Oquendo wrote next to the portion of the form related to waiver, "I do not understand this, my lawyer speaks."[3] Agent Torres then verbally read Oquendo his Miranda rights and, upon seeing the note, asked Oquendo what he did not understand. In response, Oquendo indicated that he was willing to speak without a lawyer present, but that he did not want to answer any questions about the deaths at La Tómbola. Agreeing to limit the scope of his questions, Agent Torres had Oquendo circle the portion of the waiver form consenting to speak without a lawyer. Both Oquendo and Agent Torres then signed the form, and questioning began. During the course of his

_____

[3] Oquendo's note was written in Spanish: "No entiendo eso[,] mi abogado habla." Neither party disputes the English translation's accuracy.

interrogation, Oquendo made statements indicating that he knew Ortiz possessed a gun with an obliterated serial number.

## B. Motion to Suppress

Oquendo was indicted for aiding and abetting in the possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 2 and 922(k). Before the district court, Oquendo argued for the suppression of his spontaneous post-<u>Miranda</u> statements, on the theory that his purported counsel, having arrived at the home but lacking even the most basic information about his clients, was denied access. This claim has been abandoned on appeal.[4] Oquendo also sought suppression of his statements to Agent Torres, arguing that his written note was an unambiguous request for counsel, requiring the immediate cessation of questioning until an attorney was present.

At trial, the district court judge informed the parties that he wanted to revisit his prior order denying the motion to suppress. He explained that, in issuing the initial order, he had believed the motion to suppress to focus only on a single issue: whether Oquendo's purported attorney was wrongly denied access to his client at the time of arrest. Upon closer review of the rather muddled motion, however, he understood it also to allege that Agent Torres's interrogation violated Oquendo's <u>Miranda</u> rights. In order

---

[4] Oquendo has also forgone on appeal a rather ill-formed argument that the ATF had no reason to suspect he had committed a federal crime, and thus no reason to interrogate him.

to treat this additional issue, the jury was excused and Agent Torres was called for questioning. At the end of this suppression hearing, the district court judge deemed Agent Torres's testimony credible and held that Oquendo's written statement was not an unambiguous request for counsel. Moreover, the district court judge determined that Agent Torres's decision to commence questioning approximately twenty minutes after Oquendo refused to make a statement to PRPD officers did not violate Oquendo's right to remain silent.

Oquendo appeals from the district court's determination that Agent Torres's interrogation neither violated his right to remain silent nor ignored an unambiguous request for counsel. He also forwards a new argument, seeking suppression of his initial admission to Officer Rodríguez that he did not possess a gun license. This latter claim is predicated on the theory that Oquendo, at the time of Officer Rodríguez's question, was in formal custody but had not been read his Miranda rights.

## II. Discussion

In reviewing a district court's denial of a motion to suppress, "[w]e view the facts in the light most favorable to the district court's ruling." United States v. Camacho, 661 F.3d 718, 723 (1st Cir. 2011) (alteration in original) (quoting United States v. Soares, 521 F.3d 117, 118 (1st Cir. 2008)). We assess questions of fact, as well as the district court's credibility

determinations, for clear error.  Id. at 723-24.  These findings are susceptible to reversal only where we are definitely and firmly convinced that a mistake has been made.  United States v. Nee, 261 F.3d 79, 84 (1st Cir. 2001).  Questions of law, in contrast, receive de novo review, as does the district court's application of law to its findings of fact.  United States v. Werra, 638 F.3d 326, 330 (1st Cir. 2011).

## A. Statement to Officer Rodríguez

Oquendo seeks suppression of his statement to Officer Rodríguez that he did not hold a license to possess firearms.  This statement was made while at the Toa Baja residence, after Oquendo was restrained on the floor.  Oquendo asserts that it was elicited while he was formally in custody, see Berkemer v. McCarty, 468 U.S. 420, 438-39 (1984) (establishing the test to determine whether detention prior to arrest is custodial), but prior to the receipt of any Miranda warnings.

We do not reach the merits of this claim, as it is not properly before us.  Fed. R. Crim. P. 12(e) (deeming waived any motion to suppress not made before the district court's motion deadline); United States v. Santos Batista, 239 F.3d 16, 19 (1st Cir. 2001) ("Failure to raise suppression arguments before trial shall constitute waiver thereof." (citation and internal quotation

marks omitted)).[5]   Oquendo's motion to suppress never made reference to his statement regarding licensure, instead only seeking the suppression of two other sets of statements, which were made after formal arrest and during interrogation.  United States v. Torres, 162 F.3d 6, 11 (1st Cir. 1998) ("[Rule 12(e)'s] waiver provision applies not only when a defendant has failed altogether to make a suppression motion but also when, having made one, he has neglected to include the particular ground that he later seeks to argue.").

Our court has previously suggested that unpreserved suppression arguments may be merely forfeited rather than waived, engendering plain-error review.  United States v. Nuñez, 19 F.3d 719, 723 n.10 (1st Cir. 1994); see also United States v. Pérez-González, 445 F.3d 39, 44 (1st Cir. 2006).  Recent precedent, however, shows a strong inclination against plain-error review.  United States v. Lyons, 740 F.3d 702, 720 (1st Cir. 2014) (reasoning that recent precedent strongly favors a finding of waiver); United States v. Crooker, 688 F.3d 1, 9-10 (1st Cir. 2012) (refusing to review an untimely suppression argument for plain error).  We have emphasized that, by its express terms, Rule 12(e)

---

[5]   In 2002, amendments to Rule 12 incorporated the content of what was then Rule 12(f) into the current Rule 12(e).  The Advisory Committee made clear that this alteration effected "no change in the current law regarding waivers of motions or defenses." Fed. R. Crim. P. 12 advisory committee notes on the 2002 amendments.  Pre-amendment case law, therefore, continues to guide our reasoning.

calls for waiver, and we have noted that ignoring this mandate would be "manifestly unfair" to the prosecution. United States v. Walker, 665 F.3d 212, 228 (1st Cir. 2011). We see no grounds on which to treat Oquendo's claim differently.

Neither can Oquendo find refuge in Rule 12(e)'s "good cause" exception, which allows the court to grant relief from waiver for a showing of good cause. Fed. R. Crim. P. 12(e). Like the appellant in Lyons, Oquendo "has not addressed the waiver issue at all, let alone explained why he has good cause to seek relief from it." Lyons, 740 F.3d at 720. It is not the job of this court to build good cause from naught, and Oquendo has failed even to hint at why his claim should be excused from Rule 12(e)'s express strictures. Consequently, we find that Oquendo has waived his argument for suppression of this statement.

## B. Statements to Agent Torres

Oquendo seeks suppression of his statements to Agent Torres on two grounds: (1) a violation of his right to remain silent based on the quick resumption of questioning after he initially refused to make a statement, and (2) a violation of his right to counsel based on continued questioning after what Oquendo argues was an unambiguous request for an attorney.

### 1. Right to Remain Silent

Unlike an unambiguous request for counsel, after which questioning must invariably cease until a lawyer is provided, an

invocation of the right to remain silent does not automatically bar the resumption of questioning at a later time.  See United States v. Andrade, 135 F.3d 104, 107 (1st Cir. 1998).  Rather, in determining the appropriateness of renewed questioning, our inquiry focuses on whether the suspect's "right to cut off questioning" was at all times "scrupulously honored."  Michigan v. Mosley, 423 U.S. 96, 103-04 (1975).  After an initial invocation of the right to remain silent, four factors are relevant to determining whether the resumption of questioning is permissible: (1) whether a reasonable period of time passed prior to the resumption, (2) whether the same officer resumed questioning, (3) whether the suspect received refreshed Miranda warnings, and (4) whether questioning concerned the same alleged crime.  United States v. Lugo Guerrero, 524 F.3d 5, 12 (1st Cir. 2008) (citing Mosley, 423 U.S. at 104-06).  Beyond assessing these factors, however, our ultimate review must account for the "totality of the circumstances," with an eye to determining whether the suspect retained the ability to choose whether and when to speak.  Id. (quoting United States v. Thongsophaporn, 503 F.3d 51, 57 (1st Cir. 2007)).

Oquendo hangs his hat on the first Mosley factor, arguing that twenty minutes is too short a passage of time to make the resumption of questioning reasonable.  And indeed, Agent Torres's timing gives us pause.  While Mosley did not purport to set a floor, we note that twenty minutes is some six-times shorter than

-10-

the time period found reasonable therein. Mosley, 423 U.S. at 104 (stating that "more than two hours" passed between interrogations); Andrade, 135 F.3d at 106 (same). It would be both unwise and unworkable, however, to try and demarcate a one-time-fits-all limit for assessing reasonableness, which at its worst might only send interrogating officers running for their stopwatches. Such a reading of Mosley has been previously rejected by our court, see United States v. Barone, 968 F.2d 1378, 1383 (1st Cir. 1992), and we reaffirm that logic now.

Rather, our analysis must account for the totality of the circumstances and must give appropriate attention to Mosley's other enumerated factors. Here, assessing the facts in their entirety, it is clear that Oquendo's right to cut off questioning was not impinged. Agent Torres, not Officer Rodríguez, conducted the second interrogation. Prior to commencing questioning, Agent Torres also provided Oquendo -- both verbally and in writing -- with a restatement of his Miranda rights. Moreover, the record is devoid of any indication that Agent Torres intimidated, threatened, or otherwise pressured Oquendo into offering a statement. Cf. Barone, 968 F.2d at 1384 ("[O]fficers repeatedly spoke to Barone for the purpose of changing his mind, failed to provide new Miranda warnings, applied pressure by emphasizing the danger he would face in Boston if he did not cooperate, and took advantage of a long delay in arraignment."). Indeed, when Oquendo agreed to make a

-11-

statement but asked that the scope of questioning be limited, it is uncontested that Agent Torres fully abided by those boundaries.

In sum, these facts support a finding that Oquendo retained control over his ability to choose whether or not to speak. Therefore, we find no violation of his right to remain silent. Nonetheless, this holding should not be read in any way to imply our acceptance of police practices that give suspects only a momentary respite after their refusal to make a statement. Although the broader context here makes clear that Oquendo's right to cut off questioning was appropriately preserved, that determination is fact dependent. Accordingly, our holding does not eliminate the very real possibility that, in another case, serious concerns may well arise when questioning resumes only twenty minutes after an initial invocation of the right to remain silent.

**2. Right to Counsel**

Immediately after a suspect has invoked the right to counsel, all questioning must cease until such counsel is provided. Edwards v. Arizona, 451 U.S. 477, 485 (1981). This request for counsel must be clear and unambiguous. Davis v. United States, 512 U.S. 452, 459 (1994). Where a request, marred by ambiguity or equivocation, suggests only "that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." Id. Our test is objective, requiring that the statement be such that "a reasonable police officer in the

circumstances would understand the statement to be a request for an attorney."  Id.; Obershaw v. Lanman, 453 F.3d 56, 64 (1st Cir. 2006).

Oquendo argues that his statement -- "I do not understand this, my lawyer speaks" -- was "tantamount" to an invocation of the right to counsel.  In concert with his earlier refusal to make a statement, he continues, this request was "certainly unambiguous." Finding the meaning and intent of Oquendo's statement to be less than clear, we disagree.  By its express terms, "my lawyer speaks" does not unequivocally demand assistance, request the lawyer's presence, or otherwise clearly indicate an unwillingness to make a statement absent presence of an attorney.  Cf. Obershaw, 453 F.3d at 64-65 (concluding that the question "can I talk to a lawyer first?" was an "inquir[y as to] whether [the suspect] could talk to a lawyer" not an "assert[ion] that he in fact wanted to do so").

Moreover, "when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney."  Davis, 512 U.S. at 461; see also Nom v. Spencer, 337 F.3d 112, 118 & n.5 (1st Cir. 2003).  In response to Oquendo's statement that he did not understand, Agent Torres did not "ignore his answer and forge ahead with questions." James v. Marshall, 322 F.3d 103, 109 (1st Cir. 2003).  Rather, Agent Torres asked what Oquendo did not understand.  He then asked whether Oquendo was, in

-13-

fact, willing to speak without a lawyer.  Oquendo answered in the affirmative.  Only then did Agent Torres begin his interrogation.  Highly analogous facts have been characterized by our court as "precisely the kind of 'good police practice' described . . . in Davis."  Id.

We need press no further; Oquendo did not invoke his right to counsel in a manner sufficiently unambiguous and direct as to require the cessation of questioning.  Agent Torres, confronted with an ambiguous statement, sought clarification and continued questioning only after Oquendo made clear that he was willing to proceed without an attorney.  This was not a violation of Oquendo's right to counsel.

### III. Conclusion

Oquendo's motion to suppress was correctly denied; that decision is now affirmed.

**Affirmed**.