# United States Court of Appeals
## For the First Circuit

No. 22-1534

UNITED STATES OF AMERICA,

Appellee,

v.

AMANDA COWETTE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

Before

Kayatta, Gelpí, and Montecalvo,
Circuit Judges.

Hunter J. Tzovarras for appellant.
Lindsay B. Feinberg, Assistant United States Attorney, with
whom Darcie N. McElwee, United States Attorney, was on brief, for
appellee.

December 12, 2023

**MONTECALVO, <u>Circuit Judge</u>**. Amanda Cowette appeals the district court's denial of her motion to suppress statements she made to police officers on July 16 and 17, 2018. Cowette argues that she unequivocally invoked her Fifth Amendment right to counsel and any subsequent questioning by law enforcement officers was in violation of that right and that the district court's ruling to the contrary was in error. For the reasons that follow, we find that Cowette invoked her right to counsel, and we, therefore, vacate the decision of the district court in part, affirm in part, and remand for proceedings consistent with this opinion.

## I. Background[1]

In 2018, the U.S. Drug Enforcement Administration, the Somerset County Sheriff's Office ("SCSO"), and other law enforcement agencies investigated a drug-trafficking operation in Maine headed by a man named Nicholas Culver. During that investigation, they identified Cowette as a minor participant in the conspiracy who permitted Culver to store drugs in her home. As a result of the investigation, law enforcement agencies obtained a search warrant for Cowette's home.

---

[1] Because this appeal follows a conditional guilty plea, "we glean the following relevant facts from the plea agreement, the undisputed sections of the presentence investigation report, and the transcripts of the change-of-plea and sentencing hearings." <u>United States</u> v. <u>Spinks</u>, 63 F.4th 95, 97 (1st Cir. 2023) (cleaned up).

On the morning of July 16, 2018, several days after Culver was arrested, law enforcement authorities executed that search warrant. Lieutenant Carl Gottardi of the SCSO arrived at the scene shortly after 10 a.m. and observed Cowette standing in the driveway with Corporal Joseph Jackson, also of the SCSO. Gottardi directed Cowette, who was handcuffed, to sit in his police truck. He then read Cowette her Miranda rights. The following colloquy occurred between Gottardi and Cowette, as recorded on Gottardi's vehicle's camera:

> Gottardi: And if you decide to answer any question now, with or without a lawyer present, you have a right to stop answering at any time until you can talk to a lawyer. Do you understand that?
>
> Cowette: I guess my best bet would probably be to not talk until [I] have a lawyer --.
>
> Gottardi: Well[,] no but do you understand that?
>
> Cowette: Yes.
>
> Gottardi: Okay so basically what your rights are is if you want to say something that's fine, if you want to answer one thing and not another that's fine, nobody's gonna make you say anything you don't want to say, okay? If you don't want to say anything you don't have to say anything, okay? So do you understand all of that?
>
> Cowette: Yes.
>
> Gottardi: So now having all those rights, as I just explained, in your mind, do you wish to speak with me at this time[?]

- 3 -

> Cowette:  I mean, I guess I should probably wait until I have a lawyer, that sounds like the best idea, I don't -- I've never been in court[;] I've never been in trouble, I don't --.
>
> Gottardi: Okay well I'm asking you[,] that's up to you, that's up to you.  Uh, do you want to answer any questions at this time?
>
> Cowette:  I guess not, I guess I'll wait until I have a lawyer.
>
> Gottardi: Okay great.  So what's gonna happen -- that's fine.  That's your right, and -- and that's super.

Gottardi later testified that he understood Cowette to have invoked her right to counsel at that time and did not question Cowette further.  However, Gottardi continued to explain to Cowette what the officers would be doing during the execution of the search warrant.

Gottardi then directed Cowette to exit his truck and remain outside with officers.[2]  While they stood outside, Detective Wilfred Dodge exited the residence and told Cowette that the police had found two safes inside the bedroom.  The officers asked Cowette if she would provide the combinations to the safes.  Cowette provided the combinations and then, a few minutes later, stated that a small amount of fentanyl located in a drawer belonged to her.  Gottardi reminded Cowette that she had previously said that

---

[2] The only time for which there is no video recording of Cowette's interactions with the officers is at this point when Cowette was waiting outside of her home during the search.

- 4 -

she did not want to speak to the police and that it remained her decision whether she wished to speak further.

After the search was completed, Gottardi brought Cowette back to his vehicle and described to her what the police found during the search. Gottardi reminded Cowette that in their earlier conversation she "didn't know if [she] wanted to talk to an attorney or not . . . so [they] didn't talk[,]" but stated that he wanted to "give [her] an opportunity only if [she wanted to] . . . , to give [her] version" of the events. Cowette stated that -- other than the small amount of fentanyl she had mentioned earlier -- the rest of the seized items were not hers.

Cowette was then transported from the scene by Detective David Cole. Prior to Cowette and Cole leaving the scene, Gottardi informed Cole that he had read Cowette her rights and that she told him that she wanted to speak to an attorney. Cole told Cowette that he "kn[ew] [she] didn't know if [she] wanted to talk to a lawyer or not, but if [she wanted to] answer any questions about [the seized items] . . . [he]'d be more than happy to talk to [her] about that." Throughout the car ride to the jail, Cowette and Cole spoke to each other, and Cowette made inculpatory statements. Cole continued to speak to Cowette at his office, in the same building as the jail. He explained the charges against Cowette, and she made several more inculpatory statements related to the drug trafficking.

- 5 -

The search, from Gottardi's arrival to the time Cowette was taken from the scene, lasted less than two hours. The search resulted in the seizure of a loaded gun from a hallway windowsill, multiple bags containing a total of 95.2 grams of fentanyl, cash totaling $7,444, and drug paraphernalia. Various text messages were obtained from Cowette's phone related to drug trafficking. Several confidential informants also corroborated much of Cowette's alleged involvement in the conspiracy.

The following day, on July 17, 2018, Gottardi and Cole spoke to Cowette again at their office. Cole read Cowette her Miranda rights. Approximately forty-five minutes into that interview, Cowette signed a written waiver of those rights. During the interview, Cowette made several inculpatory statements to the officers.

On February 14, 2019, a four-count indictment was filed in the district court against Cowette. However, a substitute information was filed on March 24, 2022, charging Cowette with: (1) conspiracy to distribute and to possess with intent to distribute forty grams or more of fentanyl; (2) possession with intent to distribute forty grams or more of fentanyl; and (3) using/maintaining a drug involved premises.

On June 3, 2019, Cowette filed a motion to suppress the statements she made to the police. On August 5, 2019, the district court held a hearing on that motion. The parties agreed that

Cowette was in custody at the time of questioning but disagreed as to whether she unambiguously invoked her right to counsel. Cowette argued that her use of the phrase "I guess" did not undermine the clarity of her invocation of her right to counsel under the circumstances. Cowette further argued that after the invocation, the officers reinitiated questioning by asking her for the combinations to the safes found at her residence, which led to her inculpatory statements.

On August 13, 2019, the district court issued its written decision on Cowette's motion to suppress. In its analysis of whether Cowette invoked her right to counsel, the district court focused on one term Cowette used when she spoke with Gottardi, "I guess," which the district court labeled a "qualifier." The district court noted that had Cowette not said "I guess," her statement would have been an unambiguous invocation of her right to counsel. But the district court concluded that the term "I guess" created sufficient ambiguity and was more than a "meaningless throat clearer," such that reasonable officers could believe that Cowette merely "might" have been invoking her right to counsel. Therefore, the district court held that Cowette failed to effectively invoke her Fifth Amendment right and, as a result, the officers were not required to halt the interrogation. Accordingly, the district court denied Cowette's motion to suppress.

- 7 -

Cowette then pled guilty to the three counts of the substitute information and waived any right to appeal her guilty plea, except that her plea was conditional on reserving her right to appeal the adverse judgment on the motion to suppress. See Fed. R. Crim. P. 11(a)(2); see also United States v. Adams, 971 F.3d 22, 30 (1st Cir. 2020). The court ultimately sentenced Cowette to a below-guidelines, statutory-minimum term of imprisonment of five years followed by four years of supervised release.

## II. Discussion

On appeal, Cowette contends that she unequivocally invoked her right to counsel during her first conversation with Gottardi, and she seeks the suppression of all statements she made to the police after that invocation. For the reasons that follow, we agree that Cowette properly invoked her Fifth Amendment right to counsel.

### A. Standard of Review

In reviewing the denial of a motion to suppress, "we view the facts in the light most favorable to the district court's ruling." United States v. Oquendo-Rivas, 750 F.3d 12, 16 (1st Cir. 2014) (cleaned up) (quoting United States v. Camacho, 661 F.3d 718, 723 (1st Cir. 2011)). Therefore, questions of fact and credibility determinations are reviewed for clear error. Id. "Questions of law, in contrast, receive de novo review, as does

- 8 -

the district court's application of law to its findings of fact." Id. This application of law to findings of fact includes whether particular statements constitute an invocation of the right to counsel. United States v. Carpentino, 948 F.3d 10, 23 (1st Cir. 2020). "So long as 'any reasonable view of the evidence supports it,' we will uphold the denial of the motion to suppress." United States v. Molina-Gómez, 781 F.3d 13, 18 (1st Cir. 2015) (quoting United States v. Brown, 510 F.3d 57, 64 (1st Cir. 2007)).

## B. Fifth Amendment Challenge

A request for counsel must be "clear and unambiguous." Oquendo-Rivas, 750 F.3d at 18. "Where a request, marred by ambiguity or equivocation, suggests only 'that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning.'" Id. at 19 (quoting Davis v. United States, 512 U.S. 452, 459 (1994)). The test is an objective one -- "requiring that the statement be such that 'a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'" Id. (quoting Davis, 512 U.S. at 459). We analyze a suspect's words to be "understood as ordinary people would understand them." Connecticut v. Barrett, 479 U.S. 523, 529 (1987). We keep in mind that we are to give a defendant's request for counsel "a broad, rather than a narrow interpretation." Id. (quoting Michigan v. Jackson, 475 U.S. 625, 633 (1986), overruled on other grounds by Montejo v. Louisiana, 556 U.S. 778 (2009)).

Here, as the district court did, we focus on Cowette's use of the phrase "I guess." As the district court stated, the remainder of the sentence -- "I'll wait until I have a lawyer" -- is, by itself, a clear invocation of Cowette's right to counsel. Thus, we must now determine whether the initial phrase "I guess" imbues ambiguity into the otherwise straight-forward request for counsel. We have little trouble in holding that, under the circumstances here, it does not.

The district court analogized Cowette's statements to those made by the defendant in United States v. Havlik, 710 F.3d 818 (8th Cir. 2013). In Havlik, our sister circuit held that the statements "I don't have a lawyer. I guess I need to get one, don't I?" and "I guess you better get me a lawyer then" were ambiguous phrases that did not amount to an invocation of the defendant's right to counsel. Id. at 821-22. Although the defendant in Havlik also used the phrase "I guess," there are key differences between Havlik's attempted invocation and Cowette's words here.

The initial statement in Havlik -- "I guess I need to get [a lawyer], don't I?" -- is best understood as a question posed to the officers as to whether the defendant should seek counsel, as the Eighth Circuit held. Id. at 821. There is no similar interrogatory language here; Cowette only made declarative statements and did not ask any question of the officers. As to

- 10 -

Havlik's second statement -- "I guess you better get me a lawyer then" -- we agree with our sister circuit that the phrase "I guess" may inject some ambiguity, especially because it is framed in the second person. Without commenting on what we construe the ordinary person's interpretation of that phrase to be, we understand how someone can guess or posit what another person will or should do without indicating their own intent. But here, Cowette stated: "I guess I'll wait until I have a lawyer." The crucial portions of Cowette's statement are framed in the first person ("I'll wait until I have a lawyer") and clearly "indicat[e] a certain and present desire to consult with counsel." United States v. Hunter, 708 F.3d 938, 942 (7th Cir. 2013). Consequently, given the full context of Cowette's statements, the phrase "I guess" does not create any ambiguity.

The district court erred by narrowly focusing on whether the term "I guess" is ambiguous in and of itself without contextualizing its use in Cowette's sentences. When we shift focus to Cowette's full sentences, we are convinced that she clearly invoked her right to counsel. An ordinary person, in hearing the entirety of Cowette's statement to Gottardi, could only interpret Cowette's words as plainly expressing her intent to wait for a lawyer before she spoke with the officer. See Barrett, 479 U.S. at 529. An analogy is instructive on this point. Consider

- 11 -

the following fictional colloquy in the context of hosting a guest

for dinner and ice cream:

> Host:  You can eat your ice cream now or wait until dinner.
>
> Guest: I guess my best bet would probably be to wait until after dinner.
>
> Host:  Well, no, but do you understand that?
>
> Guest: Yes.
>
> Host:  So do you want to eat ice cream now?
>
> Guest: I guess I should probably wait.
>
> Host:  Well, I am asking you.
>
> Guest: I guess not.  I guess I'll wait until after dinner.
>
> Host: Okay.  Great.

Any reasonable host would at that point do exactly what Gottardi

did -- conclude they had an answer and stop asking questions.  In

this analogy, the term "I guess" becomes virtually meaningless or,

at the least, serves as a mere colloquialism.  This ordinary-person

interpretation also makes logical sense; a person does not "guess"

what they themselves will or will not do.

Broadening our view further to the entirety of the

interaction only strengthens our conclusion that the phrase "I

guess" does not call into question Cowette's invocation of her

right to counsel.  We have noted that when a suspect makes an

unclear or ambiguous statement regarding the request for counsel,

"it will often be good police practice for the interviewing officers to clarify whether or not [they] actually want[] an attorney." Oquendo-Rivas, 750 F.3d at 19 (quoting Davis, 512 U.S. at 461). Although not required of him, Gottardi followed this best practice and repeatedly sought clarification from Cowette as to whether she was invoking her right to counsel. At each opportunity Cowette was given, she indicated that she wanted to invoke her right to counsel. Cowette never questioned whether she should wait for a lawyer or suggested that she would speak without one. And, although at first Cowette used the word "probably" twice when she spoke to Gottardi -- that her "best bet would probably be to not talk until I have a lawyer," and that, "I guess I should probably wait until I have a lawyer" -- she then responded to Gottardi by dropping the word "probably" and stating affirmatively, "I guess I'll wait until I have a lawyer." Gottardi understood that to be an invocation of her right to counsel. See Robinson v. Borg, 918 F.2d 1387, 1391 (9th Cir. 1990) (finding that the defendant's words could "only reasonably be understood as expressing a desire to obtain counsel and to do so immediately" and the interrogators understood it to be an invocation).

Of course, we acknowledge that our test here is an objective one, relying on whether a "reasonable" officer under the

- 13 -

circumstances[3] would understand that Cowette was invoking her right to counsel rather than the officer's subjective understanding. Oquendo-Rivas, 750 F.3d at 19. Here, we find that Gottardi acted as any reasonable officer would, understanding the affirmative statement "I guess I'll wait until I have a lawyer" to be an unambiguous request for counsel, after Cowette made several "probably" statements and Gottardi repeatedly asked clarifying questions.

---

[3] We also note that here, we have the benefit of not only the exact words that Cowette used but also a video of the entire encounter. Indeed, a reasonable officer must evaluate the totality of the words spoken, the tone of voice, and body language an arrestee may use. Here, Cowette's firm and curt tone of voice and body language -- looking away from the officer -- add to the reasonableness of the conclusion that Cowette was invoking her right to counsel. Although the district court stated that Cowette was "shrugging her shoulders," it found so while combining all three of the statements she made. We thus do not think this characterization accurately reflects her posture or movements while making all three statements, and particularly misconstrues Cowette's conduct in making her final statement: "I guess I'll wait until I have a lawyer." See Scott v. Harris, 550 U.S. 372, 378-79 (2007) (drawing facts from video evidence where a party's assertions, adopted by the lower court, contradicted the video evidence); see also O'Brien v. Town of Bellingham, 943 F.3d 514, 531 (1st Cir. 2019) (finding that "when the record contains video evidence, the authenticity of which is not challenged, the court should ordinarily view the facts 'in the light depicted by the video evidence.'" (quoting Underwood v. Barrett, 924 F.3d 19, 20 (1st Cir. 2019) (per curiam))); contra Anderson ex rel. Dowd v. City of Boston, 375 F.3d 71, 94 (1st Cir. 2004) (finding no clear error where the plaintiff did not point to record evidence that contradicted the district court's relevant factual findings).

We accordingly find that Cowette clearly and unequivocally invoked her right to counsel under the circumstances when she stated, "I guess I'll wait until I have a lawyer."

The government also argued before the district court that, even if Cowette properly invoked her right to counsel during her initial conversation with Gottardi, she subsequently waived her right to counsel at several later points. Because the district court found that Cowette had not invoked her right to counsel, it did not reach the government's alternative arguments.[4] Nor did the parties raise these alternative issues on appeal. For this reason, we do not address those issues now and remand for further proceedings. We do, though, offer the following guidance to the district court.

We note that "[i]mmediately after a suspect has invoked the right to counsel, all questioning must cease until such counsel is provided." Oquendo-Rivas, 750 F.3d at 18; see Minnick v. Mississippi, 498 U.S. 146, 153 (1990) (holding that "when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present"). Further, "the fact that [a suspect] responds to later interrogation by the police

_____

[4] The district court decided the issue of whether Cowette's state of mind allowed her to knowingly and intelligently waive her rights. The court found that Cowette demonstrated the "mental acuity" to waive her rights. This holding has not been challenged on appeal, and, thus, any such challenge is waived. Therefore, this limited portion of the district court's opinion is affirmed.

- 15 -

does not, in itself, establish that [they] validly waived that right." Obershaw v. Lanman, 453 F.3d 56, 64 (1st Cir. 2006). In fact, "[a]ny subsequent questioning at the officers' behest without a lawyer present is impermissible because, even if the officers obtained a Miranda waiver, that waiver is presumed to be involuntary." Carpentino, 948 F.3d at 21. The suspect themselves must be the one to reinitiate any further discussions. Id. at 21-22. "To qualify for this exception, the suspect must initiate this further communication without coercion or probing." Id. Mindful of the above, the district court, on remand, must determine whether the police subsequently reinitiated questioning and whether there was any valid waiver by Cowette.[5]

With these principles in mind, we vacate the district court's decision finding that Cowette did not properly invoke her right to counsel and remand for further proceedings.

### III. Conclusion

For the foregoing reasons, we vacate in part and affirm in part the decision of the district court on Cowette's motion to suppress and remand for proceedings consistent with this opinion. **So ordered.**

---

[5] The district court's holding that Cowette's written waiver on July 17 was valid was based solely on its holding that she had not unambiguously invoked her right to counsel during her July 16 conversation with Gottardi or any other time prior to the written waiver. For the reasons stated herein, that finding is vacated.