# United States Court of Appeals
## For the First Circuit

No. 11-1492

UNITED STATES,

Appellee,

v.

Deshawn Howard,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Howard, Lipez, and Thompson,
Circuit Judges.

Michael J. Sheehan on brief for appellant.
Mark T. Quinlivan, Assistant United States Attorney, and
Carmen M. Ortiz, United States Attorney, on brief for appellee.

July 17, 2012

**THOMPSON, Circuit Judge.** During the execution of an arrest warrant, police found a gun and drugs floating in a toilet tank and they pinned the blame on Deshawn Howard. Alleging improperly admitted evidence, erroneous jury instructions, and insufficient evidence, Howard now appeals from his gun and drug possession convictions. Concluding that there is no reversible error, we affirm.

## BACKGROUND

We outline the underlying incident and the travel of the case, saving additional details for our analysis of the purported errors. Since Howard has lodged a charge against the sufficiency of the evidence, all facts are recited in the light most favorable to the verdict. See United States v. Alverio-Meléndez, 640 F.3d 412, 416 n.1 (1st Cir. 2011).

On June 10, 2009, police in Springfield, Massachusetts received a tip that Deshawn Howard, a suspected gang member with an outstanding arrest warrant for armed assault with intent to murder, was at a house located at 193 Nottingham Street. A group of approximately eight officers, some accompanied by police dogs and armed with shotguns, were quickly assembled and dispatched to that address. Officers arrived at 193 Nottingham Street, which constituted one side of a side-by-side duplex, and surrounded it.

Several officers approached the front door, catching sight of two individuals silhouetted in the living room window.

One of the individuals disappeared and officers started pounding on the door, announcing themselves as police, and demanding entry. Almost immediately Cheryl Knowles opened the door yelling something to the effect of: "Don't shoot. I'm coming out." Knowles, it was later learned, had rented and resided at 193 Nottingham Street for approximately ten years. She lived there with her twenty-five-year-old son Lyle Treadwell, who was a friend of Howard's.

Knowles was ushered outside and officers headed into the house to locate Howard. Howard had moved to the rear of the house and he was spotted peering out a small bathroom window by officers stationed in the back yard. Officers raced through the house but did not encounter Howard. Some officers near the bathroom noted a stairway and followed it into the basement. Howard was not down there but a door leading to the basement of the adjoining duplex had been kicked in. Officers found Howard in that adjoining basement crouched behind a washing machine. A scuffle ensued and Howard was taken into custody.

Howard was brought outside where he was treated for a head laceration sustained during the fracas. Once the arrest had been successfully executed, things calmed down and weapons were stowed. Knowles was presented with a consent to search form, which she signed. After securing Knowles' written permission, officers entered the house and performed an organized search. Officer Edward VanZandt searched the bathroom where Howard had been

previously spotted.[1]  On the bathroom vanity VanZandt found a cell phone (later determined to be a pre-paid phone with pictures of Howard on it) and a burning cigarette (later determined to contain Howard's DNA).  VanZandt lifted the lid on the toilet tank and discovered a loaded semiautomatic handgun and a large bag of individually wrapped crack cocaine rocks floating on top of the water.  In the kitchen, other officers discovered more contraband on the kitchen table - another bag of individually packaged crack cocaine rocks, numerous unused plastic bags, and two digital scales.  Howard was transported to police headquarters where $200 in cash was found on his person.

A federal grand jury returned a three-count indictment against Howard, charging him with possession with intent to distribute cocaine base (Count 1), 21 U.S.C. § 841(a)(1), being a felon in possession of a firearm (Count 2), 18 U.S.C. § 922(g)(1), and possession of a firearm in furtherance of a drug trafficking crime (Count 3), 18 U.S.C. § 924(c)(1)(A).  The indictment also included an aiding and abetting charge for Counts 1 and 3.

Prior to trial Howard moved to suppress the gun, drugs, and other evidence seized by police, arguing lack of probable cause, lack of a search warrant, and lack of consent. Additionally, he argued that the waiver completed by Knowles was

---

[1] Howard argues that this search actually occurred prior to Knowles giving consent.  We will get to this later.

-4-

obtained by coercion.  Following a three-day evidentiary hearing, the district court denied the motion in an oral decision.  Among other things, the judge found that Knowles willingly and knowingly consented to the search and the search did not begin until consent was given.

On December 6, 2010, the case proceeded to trial.  After five days of testimony and a couple of hours of deliberation, the jury found Howard guilty on all counts.  He was sentenced to thirteen years and three months in prison.  Howard now appeals, taking a threefold approach.  First, he claims officers searched the home prior to obtaining Knowles' consent and therefore the district court erred in denying his motion to suppress.  Next, Howard argues there was insufficient evidence to support the district court's jury instructions on joint possession and aiding and abetting.  Finally, he asserts there was insufficient evidence to support a finding that he possessed the gun and drugs.

## ANALYSIS

### A. Motion to Suppress

Review of a denial of a motion to suppress is bifurcated. We review findings of fact for clear error and legal conclusions de novo.  See United States v. Tiem Trinh, 665 F.3d 1, 9 (1st Cir. 2011).  "A clear error exists only if, after considering all the evidence, we are left with a definite and firm conviction that a

mistake has been made." United States v. Brake, 666 F.3d 800, 804 (1st Cir. 2011) (internal quotation marks omitted).

Howard challenges the court's decision to admit the gun, drugs, and drug supplies into evidence claiming that the contraband was the product of an unlawful search. Howard's argument is a strictly factual one. He takes aim at the court's finding that the search occurred after Knowles gave consent.[2] In support, he singles out VanZandt's search of the bathroom. By way of a brief background, we present VanZandt's chronology, as established by his trial testimony: VanZandt entered the home behind the initial wave of officers; he traveled through the living room, into the kitchen, and then into the bathroom; he then went to the basement where Howard was already in cuffs; he then conducted a search of the bathroom.

Howard argues that VanZandt's testimony establishes that these events took place in immediate succession. And, by Howard's estimate, twenty minutes elapsed between Knowles being removed from the home and her consenting to the search. Thus Howard theorizes that the search must have occurred before Knowles gave consent. In further support of his challenge, Howard points to a photograph that another officer took of his half burnt cigarette, arguing that

---

[2] This is a departure from Howard's approach at the suppression hearing, which consisted of first, countering the government's contention that Howard (as a guest in Knowles' home) did not have standing to challenge the search and second, arguing that Knowles' consent was not voluntary.

the cigarette would have burnt further down and there would be more ashes if it had been left smoking for twenty minutes.

Whether Howard's theorem on the chronology of VanZandt's actions is or is not accurate, we need not say. VanZandt did not testify at the suppression hearing; he only testified at trial. Similarly, the photograph of the cigarette was only introduced at trial. Although Howard acknowledges this point, he nonetheless urges us to consider the testimony and photograph in our review of the district court's denial of his motion to suppress and, in particular, the court's factual finding on the search's timing. While it is true that we may consider evidence adduced at trial when reviewing the denial of a motion to suppress, we may do so only if the defendant renewed his suppression motion at trial. See United States v. Scott, 566 F.3d 242, 245 (1st Cir. 2009); United States v. de Jesus-Rios, 990 F.2d 672, 675 n.2 (1st Cir. 1993). Howard did not renew his motion at trial and so our review does not include VanZandt's testimony or the photograph. Our examination of the propriety of the suppression ruling is limited to the evidence presented at the suppression hearing. See Scott, 566 F.3d at 245.

At the suppression hearing, documentary evidence, in the form of the grand jury transcript, Knowles' statement to police, her consent waiver, and photographs of the house, was introduced. Additionally, Knowles and six Springfield police officers testified. The officers were those involved in arresting Howard,

obtaining Knowles' consent, searching the house, booking Howard, taking Knowles' statement, or some combination of these things. This evidence, taken as a whole, supports the court's finding that consent preceded the search.

Two officers testified that the search took place after Knowles gave consent. Though he could not recall the particulars of how he was told, one officer explained: "I was notified the [consent waiver] was signed and we were moving into the house. We moved into the house." Knowles, for her part, testified that while she was in the yard signing the consent waiver, some officers (who at this point had Howard out of the house and in custody) were already in the house. The two stories are not inconsistent. As the district court explained, officers were engaged in a protective sweep of the house at that time, looking for any individuals that might be hidden. There is no indication that they were lifting up toilet tank lids or otherwise searching the home for contraband.

The district court's conclusion that officers did not start searching until Knowles gave consent was not clearly erroneous. The motion to suppress was properly denied.

## B. Jury Instructions

Howard's contention to this court is the same as it was at trial. He argues that the evidence was insufficient to support a joint possession and aiding and abetting instruction. "We review de novo a preserved objection to the trial court's decision to give

a requested jury instruction." United States v. Whitney, 524 F.3d 134, 138 (1st Cir. 2008).

Prior to the start of trial the government supplied the court with proposed jury instructions. These included a suggested joint possession instruction and an aiding and abetting instruction with regard to the drug possession count.[3] We fast-forward to trial. There Howard offered only one piece of evidence in his own defense. The evidence (given to the jury in the form of a stipulation) was that Lyle Treadwell, Knowles' son who was living with her at the time of Howard's arrest, had three convictions extending from 2002 to 2008 for gun and/or cocaine possession.

When the time came to debate the merits of its proposed jury instructions, the government pointed to this evidence in support of its joint possession and aiding and abetting instructions. It argued that Howard's pointing the finger at Treadwell, and the evidence adduced at trial, supported an argument that Howard possessed the drugs in cahoots with Treadwell or perhaps Knowles. Howard objected to the proposed instructions. He claimed that he was the government's sole target and that the government did not present any evidence that the drugs belonged to anyone else. He further claimed that to the extent the inference had been raised that the drugs belonged to Treadwell or Knowles,

_____

[3] The government also sought an aiding and abetting charge in connection with the possession of a firearm in furtherance of a drug crime count. The court ultimately denied this request.

-9-

there was no evidence that Howard was working in concert with them. The trial judge disagreed, citing Howard's lone piece of evidence - the stipulation of Treadwell's convictions. The court indicated that this evidence put the issue "squarely in the jury's lap" since Howard had suggested during his defense case that the drugs belonged to another. The court gave the requested instructions.

As a general matter, "[j]oint possession occurs when both the defendant and another person share power and intent to exercise dominion and control over contraband." United States v. Georgacarakos, 988 F.2d 1289, 1296 (1st Cir. 1993) abrogated on other grounds by United States v. Scott, 270 F.3d 30, 35 (1st Cir. 2001). Constructive possession, which is the theory the government relied on, can be joint. See United States v. Hicks, 575 F.3d 130, 139 (1st Cir. 2009). As for aiding and abetting liability, the government must prove that the principal committed the charged substantive offense and that the accomplice was associated with and took part in the criminal endeavor, intending to achieve its success. See United States v. Gonzalez, 570 F.3d 16, 28-29 (1st Cir. 2009).

Here, the evidence offered during the government's case demonstrated that on the date of Howard's arrest, Knowles was living at 193 Nottingham Street with Treadwell. Howard was friends with Treadwell and friendly enough with Knowles to spend time eating with, and socializing with, her alone. Howard was at

-10-

Knowles' house because he was waiting for Treadwell to return home. Individually packaged crack cocaine rocks along with drug distribution paraphernalia (i.e., digital scales and plastic bags) sat out in the open on Knowles' kitchen table. Crack cocaine, packaged in the same manner as that on the table, was in the bathroom that Howard had recently been in. The evidence offered by Howard established that Treadwell had multiple convictions for gun and drug possession.[4]

When crafting jury instructions a judge must consider all of the evidence introduced at trial, in other words, the government's as well as the defense's. Here the evidence, in its totality, established that there was an individual, with a significant criminal past involving guns and drugs, living at the home where Howard, the gun, and the drugs were found. Howard used this evidence to cast suspicion on Treadwell and Knowles, and in doing so, raised an inference that he possessed the drugs jointly with Treadwell or Knowles or that he hid the drugs in order to help them out. The evidence extant and Howard's own theory of the case

---

[4] If there was any doubt as to why Howard offered this evidence, defense counsel hammered the point home during closing argument. Of Knowles, counsel stated: "[O]bviously, is she going to say that's my gun and my drugs? Is she going to say that's my son's gun? That's my son's drugs? Or is she going to say I got no idea?" Counsel added: "Who's to say [Knowles] wasn't there bagging the drugs? We will never know. Who's to say [Treadwell] hadn't been there earlier that day bagging the drugs?" The theme continued: "You know Lyle Treadwell's history and you saw his mother. To give him a pass when that's found in their house."

made the joint possession and aiding and abetting instructions appropriate. See, e.g., United States v. Carrasco, 257 F.3d 1045, 1050 (9th Cir. 2001) (finding a joint possession jury instruction appropriate when the defendant testified, and his counsel argued, that the gun he was charged with possessing belonged to his vehicle passenger); United States v. Oberle, 136 F.3d 1414, 1422 (10th Cir. 1998) (finding that even though the government proceeded on the theory that the defendant was the principal bank robber, an aiding and abetting jury instruction was proper when there was some evidence that the defendant was involved in preparations for the robbery). The court did not err in giving the instructions.

### C. Sufficiency of the Evidence

According to Howard, there was not enough evidence to convict him of possessing the gun and drugs. Because he preserved this sufficiency claim by moving for judgment of acquittal at the close of the government's case and again at the end of trial, our review is de novo. See United States v. Jones, 674 F.3d 88, 91 (1st Cir. 2012). When evaluating sufficiency, we examine the direct and circumstantial evidence in the light most favorable to the prosecution. See United States v. Cruz-Rodriguez, 541 F.3d 19, 26 (1st Cir. 2008). We then ask whether the evidence, and all plausible inferences taken therefrom, "would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime." Id.

-12-

Howard was not found with the gun or drugs on his person and therefore the government proceeded on a theory of constructive possession. Constructive possession "exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object either directly or through others." Hicks, 575 F.3d at 139. Constructive possession can be established through circumstantial evidence. See id.

Howard's assertion that the evidence was insufficient to establish that he possessed the gun or drugs is premised on the following.[5] First, he points out that he was a "mere guest" in Knowles' home and no one saw the gun or drugs in his hands. He adds that forensic evidence tying him to the gun or drugs was nowhere to be found. Howard continues by claiming that the police have no idea how long the items were in the toilet tank. Finally, Howard draws our attention to the absence of any inculpatory statements made by others or admissions made by him. Although Howard's contentions are all true, there was nonetheless enough circumstantial evidence to permit a rational juror to conclude that Howard possessed - that is, had the power and intention to exercise dominion and control over - the gun and drugs.

_____

[5] Howard does not argue that the evidence was insufficient on any other fronts (e.g., insufficient to establish that he was a felon, or that the gun traveled in interstate commerce, or that the amount of crack cocaine met the requisite amount, or that the crack cocaine was intended for distribution, or that the gun was intended to further this distribution). Therefore we direct our inquiry toward the possession issue alone.

-13-

Howard and Knowles were the only individuals found at 193 Nottingham Street and officers, who had created a perimeter around the house, never saw anyone else leave. Knowles testified that the gun, drugs, and scales did not belong to her and she had not seen her son bring them into the house. The gun and drugs were found floating in the water of the toilet tank in the downstairs bathroom. Howard was seen peering out of this bathroom just before officers entered the house. A phone containing pictures of Howard was found in the bathroom, as was a burning cigarette containing his DNA. One officer testified that he had participated in the execution of over one-thousand search warrants and that he has never come across guns or drugs being stored in water. In the nearby kitchen, additional drugs, scales, and plastic bags were found on a table sitting right in the middle of the kitchen. Howard had $200 cash on his person.

Viewing this evidence in the light most favorable to the prosecution, we find that a rational juror could have concluded beyond a reasonable doubt that Howard possessed the gun and drugs. The cigarette conclusively tied Howard to the bathroom where the gun and drugs were found. The officers' testimony established that Howard was in the bathroom just before officers entered the home. The drugs in the toilet tank were bagged in a manner suggesting they were headed for distribution. The drugs on the kitchen table, which were out in the open, were packaged the same way. In the

moments prior to the officers' entry, Howard was undoubtedly in or around the kitchen since the living room (where he was first spotted) was connected to the kitchen, and the bathroom (where he was next spotted) was adjacent to it. In fact, these are the only three rooms on the first floor.

Even if, as Howard suggested, it is a conceivable inference that Treadwell or Knowles elected to store a gun and drugs in the toilet tank, there is a plausible alternative read. That is, because of the distinct possibility that the gun and drugs would be damaged by water, Treadwell or Knowles would not have done so, and instead Howard, operating under the time constraints brought on by swarming officers, hastily stashed the gun and drugs in the tank to hide them. It was within the jury's prerogative to choose which inference seemed most worthy of belief. See United States v. Dwinells, 508 F.3d 63, 74 (1st Cir. 2007). Because the jury's verdict was "supported by a plausible rendition of the record," we uphold it. United States v. Castro-Davis, 612 F.3d 53, 60 (1st Cir. 2010).

## CONCLUSION

After taking a good look at Howard's arguments, we are satisfied that none have merit. The judgment below is affirmed.

-15-