# United States Court of Appeals
## For the First Circuit

No. 14-1105

UNITED STATES OF AMERICA,

Appellee,

v.

TIMOTHY MAJERONI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch, Chief Judge,
Thompson and Kayatta, Circuit Judges.

James S. Hewes for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with
whom Thomas E. Delahanty II, United States Attorney, was on brief,
for appellee.

April 27, 2015

**KAYATTA, Circuit Judge**. Convicted and sentenced for possessing child pornography and violating supervised release, Timothy Majeroni advances five arguments on appeal: (1) the district court abused its discretion under Federal Rule of Evidence 403 in admitting his prior child pornography conviction; (2) the district court similarly erred in admitting evidence of his supervised release; (3) the district court erred in denying his motion to suppress evidence from the search of his apartment; (4) the evidence was insufficient to convict him of the charged offense; and (5) the district court abused its discretion in sentencing him to a mid-range prison term. Finding that none of his arguments comes close to the mark, we affirm his conviction and sentence.

## I. Background

In 2001, Majeroni was convicted of possessing child pornography, resulting in a prison term followed by a period of supervised release. Majeroni twice violated the conditions of that supervised release, in 2004 and 2007. In 2008, he was convicted of failing to register under the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a), resulting in yet another prison term followed by another period of supervised release, the terms of which he

also violated. In January 2012, the district court sentenced him for this third supervised release violation, imposing a term of imprisonment followed by another period of supervised release that began in August of 2012.

The special conditions for that most recent period of supervised release substantially restricted Majeroni's freedom. He was confined to his home and monitored by a GPS at all times. His supervising probation officer had authority to visit his home without warning or cause. He was not to access the internet or possess a computer without prior approval from his probation officer. Additionally, probation officers could search and seize any computer equipment.

This new term of supervised release, like his prior terms of supervised release, was short-lived. On November 26, 2012, two probation officers, Kristin Cook and Laura Tait,[1] visited Majeroni's home. Upon arriving, they knocked on his front door, but got no answer. After three or four minutes, Majeroni came to the door. Alone in his apartment, he explained his delay by claiming that he had been lying down. He then invited them in. Upon entering, Cook noticed that the

---

[1] Cook was Majeroni's primary supervisor. Tait played a supporting role during the visit, monitoring Majeroni's behavior whenever Cook was out-of-sight.

spare bedroom, previously unfurnished, now had a desk, a chair, and an air mattress.  Cook also noticed a burning cigarette and a cup of coffee on the desk.  She asked Majeroni why those items were there if he had just been lying down. Majeroni offered no explanation.

Cook then observed a laptop power cord, plugged into the wall and coming out from behind the desk.  She asked Majeroni whether he had a laptop.  He denied having one, and claimed that the power cord was for his television's remote control.  Cook was not convinced.  Suspecting he had a laptop computer, she asked whether he minded if she searched his apartment, to which he replied, "No, I don't mind."

Cook then entered the spare bedroom.  Lying immediately adjacent to the desk was an opened backpack, covered with clothes.  Cook moved the clothes and found a laptop computer and internet modem.  She asked Majeroni why he lied.  He said he did not know why, and further confessed to having possessed the laptop for two months.  Cook seized the laptop and modem.  Majeroni did not object.  He was remorseful and compliant.  Majeroni said, "I don't know why I did this, [Cook] was really good to me, I feel badly."  The next day, Majeroni came to Cook's office.  He admitted to twice having accessed the internet on that laptop computer.

He indicated that his delay in answering the door on November 26 was due to his having been on the internet.

Cook transferred Majeroni's laptop to a probation officer with computer forensics training. The officer's preliminary search revealed child pornography. The officer then transferred the laptop to the Secret Service. In an abundance of caution, agents applied for and received a warrant prior to searching the laptop.[2] They ultimately found 190 pornographic images of children.

A grand jury charged Majeroni with possessing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2256(8)(A). Pretrial, Majeroni moved to suppress evidence from the searches of his home and computer. The district court denied that motion. The government moved to admit evidence of Majeroni's 2001 conviction for possessing child pornography. The district court granted that motion. Majeroni then moved to exclude any reference to the conditions of his supervised release. The court rejected that motion, but also limited the government to showing simply that Majeroni was on supervised release for a criminal offense,

---

[2] The Secret Service suggested in its application that it may "already have all necessary authority to examine the laptop" but applied anyways "out of an abundance of caution."

that he was supervised by Cook and subject to home confinement and GPS monitoring, and that Cook seized Majeroni's laptop to look for evidence of supervised release violations. As it turned out, Majeroni's attorney ultimately informed the court that he saw no need to request a limiting instruction.

After a two-day trial, a jury convicted Majeroni. According to the United States Sentencing Guidelines, he faced 135-168 months for the child pornography offense, and 18-24 months for the supervised release violation. The district court imposed consecutive 150- and 24-month sentences and a life term of supervised release.

## II. Analysis

## A. Majeroni's Prior Child Pornography Conviction

Over Majeroni's objection, the district court admitted into evidence a stipulation that Majeroni pleaded guilty in 2001 to possession of child pornography.[3] Majeroni

---

[3] That stipulation provided that:

On April 25, 2001, the defendant pleaded guilty to two counts of possession of child pornography in the United States District Court for the District of Maine. In connection with his guilty plea, the defendant admitted that he had knowingly possessed a personal desktop computer and a floppy computer storage disk that both contained images of child pornography. The defendant was sentenced for these offenses on July 31, 2001.

The court then promptly instructed the jury as follows:

appears to recognize that Federal Rule of Evidence 414 expressly grants the trial court the discretion to admit such evidence in a case of this type.[4] He nevertheless argues that admitting the evidence in this particular case was an abuse of that discretion, because a proper balancing of probative value versus unfair prejudice under Rule 403 compelled the exclusion of the evidence.[5]

---

[Y]ou've heard evidence, the evidence being the stipulation, that the defendant was convicted of possession of child pornography in the United States District Court for the District of Maine in 2001. You may consider this evidence on any matter which you believe it to be relevant. However, evidence of this prior offense on its own is not sufficient to prove the defendant guilty of the crime charged in the indictment.

Bear in mind as you consider this evidence at all times the Government has the burden of proving beyond a reasonable doubt that the defendant committed each of the elements that I've just described earlier in the case of the offense charged in the indictment. I remind you that the defendant is not on trial for any act, conduct, or offense not charged in this indictment.

[4] Federal Rule of Evidence 414 provides that:

In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant.

Possession of child pornography constitutes evidence of "child molestation," as defined under Rule 414. Fed. R. Evid. 414(d)(2)(B).

[5] "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the

Where, as here, objections are preserved, we review the district court's evidentiary rulings for an abuse of discretion. United States v. Joubert, 778 F.3d 247, 253 (1st Cir. 2015). In exercising their broad discretion under Rule 403, trial judges have a feel for the evidence and the courtroom that is difficult to replicate on the pages of a transcript, so our deference to judgment calls of this type is great. See United States v. Bayard, 642 F.3d 59, 63 (1st Cir. 2011). In challenges to inherently prejudicial Rule 414 evidence, we are also mindful that Rule 403 only guards against unfair prejudice. See United States v. Gentles, 619 F.3d 75, 87 (1st Cir. 2010). Finally, we employ no heightened or special test for evaluating the admission of Rule 414 evidence under Rule 403. See Martinez v. Cui, 608 F.3d 54, 60 (1st Cir. 2010) (rejecting those tests that "more carefully scrutinize district courts' decisions under Rules 413-415").[6] Instead, we review such rulings under the ordinary abuse-of-discretion standard. Id.

---

jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed R. Evid. 403.

[6] For contrary views we have rejected, see United States v. Kelly, 510 F.3d 433, 437 (4th Cir. 2007); United States v. LeMay, 260 F.3d 1018, 1027-28 (9th Cir. 2001).

Under any test, the district court in this case clearly did not abuse its discretion. The evidence of prior possession of child pornography was in the form of a guilty plea, eliminating any risk of having the issue of prior conduct bloom into a trial within the trial, and reducing the possibility that the admittedly prejudicial information was inaccurate. The fact that the prior conduct was similar to the charged conduct enhanced its presumed probativeness. Nor does the fact that the prior conduct occurred over ten years before the charged conduct compel a different result. See, e.g., United States v. Jones, 748 F.3d 64, 68-71 (1st Cir. 2014) (no abuse of discretion in admitting evidence of child molestation conviction occurring eighteen years prior to charged conduct); Joubert, 778 F.3d at 254-55 (no abuse of discretion in admitting evidence of similar child molestation acts that allegedly occurred eighteen to twenty years prior to charged conduct). And the court's controlled method of introducing the information, with a limiting instruction, speaks well of its carefully nuanced exercise of discretion. See Jones, 748 F.3d at 71 (precautionary measures such as limiting instructions reduce risk of unfair prejudice).

Majeroni also argues (for the first time on appeal) that there was no evidence to suggest that the images from the

prior conviction were of actual children, yet Rule 414 requires an actual child victim. But Majeroni did not raise this argument below, so we review only for plain error. United States v. Burdulis, 753 F.3d 255, 263 (1st Cir. 2014). And we see no such error, plain or not, given his guilty plea to the prior charges.

**B. Evidence of the Terms of Majeroni's Supervised Release**

In setting the scene and context for both the discovery of the laptop and Majeroni's conversations with Cook, the evidence revealed the existence and general nature of Majeroni's supervised release. Majeroni now presses an objection to that plainly relevant background evidence, arguing that it "tainted the jury," especially without a limiting instruction. But Majeroni's attorney affirmatively decided not to ask for a limiting instruction because, as he explained, the evidence did not "seem to have a big splash during trial," see United States v. Rodriquez, 311 F.3d 435, 437 (1st Cir. 2002) (party who identifies issue and then waives issue cannot resurrect it on appeal), and Majeroni himself cross-examined Cook on the terms of supervised release, see United States v. Munson, 819 F.2d 337, 342 (1st Cir. 1987) (no Rule 403 violation when defendant elicited

evidence that he claimed was unfairly prejudicial).  Given the properly admitted evidence of a prior conviction, and the strong direct evidence of guilt, we have no doubt that this evidence did not make much of a "splash."  Be that as it may, the district court certainly did not abuse its discretion.

## C.  Denial of Majeroni's Motion to Suppress

In a convoluted argument, Majeroni suggests that he had not agreed to the condition of his supervised release that allowed a search based on "a reasonable basis" to believe the search would discover a violation, and that Cook otherwise lacked probable cause for a warrantless search.  The simple answer to this challenge is that Cook took the added precaution of securing Majeroni's express consent to the search.  See Illinois v. Rodriguez, 497 U.S. 177, 181 (1990) (prohibition against warrantless searches does not apply "to situations in which voluntary consent has been obtained").  We could go on, but we need not.  There was no Fourth Amendment violation.

## D.  Sufficiency of Evidence

Majeroni claims that the record evidence was insufficient to support his conviction because there was no evidence that the illicit images were of actual children.

Alternatively, he argues that there was no evidence that he knew there was child pornography on his laptop. Majeroni forfeited these arguments by not renewing his motion for a judgment of acquittal after the defense rested. United States v. Reynoso, 276 F.3d 101, 102 (1st Cir. 2002) (per curiam) (failure to renew motion for judgment of acquittal after defense rests constitutes forfeiture). So we review for plain error. United States v. Christi, 682 F.3d 138, 140 (1st Cir. 2012).

The jurors examined the photos and the district court specifically instructed them that, in order to convict, they needed to find that the images were of actual children. There is nothing about those images or the technical evidence to which Majeroni points that would make the pictures plainly other than what the jury found them to be.

As for Majeroni's own supposed lack of knowledge about the photos, he points only to the fact that his romantic partner claimed that she had never seen him use a laptop. She also testified that other people visited his apartment "all the time." The jury apparently did not agree that this testimony gave rise to reasonable doubt. Given Majeroni's behavior on the day of the search (much less his admission to Cook), there is no cause for us to second guess such a

-12-

judgment that "is supported by a plausible rendition of the record." United States v. Wilder, 526 F.3d 1, 8 (1st Cir. 2008) (internal quotation marks omitted); see United States v. Mena-Robles, 4 F.3d 1025, 1031 (1st Cir. 1993) (jury is "empowered to accept or reject, in whole or in part, any testimony").

## E.   Sentencing Challenge

Finally, Majeroni challenges the substantive reasonableness of his 174-month prison sentence, contending that the district court abused its discretion by not downwardly varying. Majeroni claims that the district court should have done so in light of the extensive abuse he suffered as a child, his distinguished military service, his mental health issues, his post-offense rehabilitation, and the harshness of the child pornography sentencing guidelines.

We review the substantive reasonableness of a sentence for an abuse of discretion. Joubert, 778 F.3d at 256. "The hallmarks of a substantively reasonable sentence are 'a plausible sentencing rationale and a defensible result.'" United States v. Zapata-Vazquez, 778 F.3d 21, 24 (1st Cir. 2015) (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)).

The district court here explicitly weighed Majeroni's mitigating and aggravating circumstances. The court was mindful of his military service and the horrible abuse he suffered as a child. The court similarly considered the unlikelihood of Majeroni reforming his behavior. Familiar with Majeroni from his prior run-ins, the district court had little faith in his ability to reform, given previous supervised release violations. "That the sentencing court chose not to attach to certain of the mitigating factors the significance that the appellant thinks they deserved does not make the sentence unreasonable." United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011). There is "a range of reasonable sentences" for any defendant, and Majeroni's mid-range sentence here does not "fall[] outside the expansive boundaries of that universe." Martin, 520 F.3d at 92.

## III. Conclusion

For the aforementioned reasons, we affirm Majeroni's conviction and sentence in all respects.