# United States Court of Appeals
## For the First Circuit

No. 17-1325

UNITED STATES OF AMERICA,

Appellee,

v.

NEIL SWEENEY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Lynch, Stahl, and Kayatta,
Circuit Judges.

Joan M. Fund for appellant.
Jo-Ann Karshon, Office of the Solicitor General, United States Department of Justice, with whom William D. Weinreb, Acting United States Attorney, was on brief, for appellee.

April 11, 2018

**STAHL**, **Circuit Judge**.    Defendant Neil Sweeney ("Sweeney") was convicted of distribution and possession of child pornography, in violation of 18 U.S.C. § 2252A.  On appeal, Sweeney raises the following arguments: (1) the district court erred in admitting evidence that was collected based on an overly broad and stale search warrant in violation of his Fourth Amendment rights; (2) the district court erred in failing to suppress statements made in violation of his Fifth and Sixth Amendment rights; (3) the district court abused its discretion in admitting evidence pursuant to Federal Rule of Evidence 414; (4) the district court erred in giving an aiding and abetting jury instruction; and (5) the sentence imposed by the district court violated the Constitution.    We affirm his conviction and sentence in all respects.

## I. Background

In 2014, the Federal Bureau of Investigation ("FBI") was investigating the distribution of child pornography through a network called GigaTribe.[1]  In December 2014, FBI Agent Kevin Matthews ("Agent Matthews") logged onto GigaTribe using the alias "localboy" in order to make contact with GigaTribe user

---

[1] According to the government, "GigaTribe is a peer-to-peer sharing network used by many individuals who are involved in the illegal distribution of child pornography.  Through the GigaTribe network, individuals can share files that they have stored on their computers with other people who are part of the network."

"irishrebble."[2]  Agent Matthews made contact with irishrebble, and irishrebble expressed an interest in young boys between the ages of eight to fifteen.

Several months later, on April 9, 2015, Agent Matthews, through the alias localboy, again made contact with irishrebble on GigaTribe.  Irishrebble shared the password to his file folder with localboy, in exchange for localboy providing irishrebble with the password to localboy's folder.  Agent Matthews was able to download thirty images and videos that constituted child pornography from irishrebble's folder, however he lost access to the folder after about 1.5 minutes of downloading.  Matthews assumed that he was cut off from irishrebble's folder once irishrebble learned that the password Matthews provided was unusable.  Agent Matthews determined that there were 239 files in irishrebble's shared folder on GigaTribe.  Agent Matthews saw dozens of video and image files in the folder and their names suggested that the files were child pornography.

Following this event, FBI agents traced the IP address used by irishrebble on April 9, 2015 to 54 Elm Street, Worcester, Massachusetts.  During the relevant period, Sweeney lived on the

---

[2] Agent Matthews had taken over the account of localboy as part of a cooperation agreement in 2011.  Matthews had between eighty to ninety GigaTribe accounts that he monitored to investigate incidents of child pornography and child pornography distribution.

third floor of the residence. Several other people resided at the location, which also included a carriage house in the rear. The moniker "irishrebble" was used by Defendant on various social networking websites, including LinkedIn, Twitter, and a Yahoo account, irishrebble@yahoo.com. The Yahoo account was linked to the Facebook profile of one Neil Sweeney and the GigaTribe account of irishrebble. The Facebook profile of one Neil Sweeney included pictures of the Defendant. The password for the GigaTribe account user irishrebble was Primo6765. The numerical part of the password, 6765, corresponded to Defendant's birthday, June 7, 1965.

Based on this information, FBI agents obtained a search warrant for Sweeney's residence and on March 20, 2015, the warrant was executed. Inside Sweeney's residence, agents discovered a Chromebook, which was damaged and unsearchable, and a Dell laptop. The laptop had the same registered IP address as the one used on April 9, 2015 by GigaTribe user irishrebble. The computer had three users: one primary user, irishrebble, and two other accounts associated with a Michael Riel and a Matthew Nunnelly. The computer had accessed the Yahoo account of irishrebble@yahoo.com and the Facebook account of a Neil Sweeney. On the laptop, agents uncovered thumbnail image files that depicted young boys engaged in sexual activity. The agents could not tell if the computer had accessed GigaTribe, nor could they find the specific files that

GigaTribe user irishrebble shared with Agent Matthews on April 9, 2015.

On the day the warrant was executed, Sweeney was arrested at his residence. On August 19, 2015, Sweeney was indicted on two counts for Distribution of Child Pornography and with Aiding and Abetting that crime, and Possession of Child Pornography. On October 3, 2016, following a six-day trial, Sweeney was convicted on both counts. On March 13, 2017, Sweeney was sentenced to seventeen years of imprisonment, followed by ten years of supervised release.

**II. Analysis**

Sweeney contests his conviction and sentence on a variety of grounds. We address each issue in turn.

A. Fourth Amendment Challenge: Motion to Suppress Evidence as it Relates to the Search Warrant

Sweeney filed a motion to suppress the evidence seized as a result of the search warrant, claiming that the warrant violated the Fourth Amendment because it was overly broad and stale. The district court denied the motion and also found that it was untimely filed. On appeal, Sweeney renews his challenge to the search warrant.

Generally, this Court reviews the district court's legal conclusions denying a motion to suppress de novo, and its factual findings for clear error. See United States v. Crooker, 688 F.3d

1, 6 (1st Cir. 2012). However, pursuant to Fed. R. Crim P. 12(c)(3), the Court need not review a motion to suppress that was untimely filed. Even when the district court rules on an untimely motion, as the court did here, an untimely motion to suppress is deemed waived unless the party seeking to suppress can show good cause as to the delay. See, e.g., United States v. Walker-Couvertier, 860 F.3d 1, 9 & n.1 (1st Cir. 2017); United States v. Santos Batista, 239 F.3d 16, 20 (1st Cir. 2001); United States v. Bashorun, 225 F.3d 9, 14 (1st Cir. 2000). Sweeney neither challenged the finding of untimeliness before the district court, nor does he now argue that his delay in filing the motion to suppress was excused by good cause.[3] As such, because of his waiver, we need not address the merits of Sweeney's appeal.

B. Fifth and Sixth Amendment Challenge: Motion to Suppress Statements

On May 20, 2015, when Sweeney was arrested in his home, he asked the agents what the charges were against him. Agent Weidlich responded that he was being charged with possession and distribution of child pornography. Sweeney stated, "I don't even

---

[3] Sweeney's attempt to demonstrate that the motion was not untimely in his reply brief is to no avail, as he acknowledges that the issue was "not addressed directly" in his opening brief. See United States v. Brennan, 994 F.2d 918, 922 n. 7 (1st Cir. 1993) (explaining that arguments raised for the first time in a reply brief are waived).

- 6 -

own a computer."[4]  Sweeney was not Mirandized until he was brought to the Worcester Police Station.  At the station, Agent Weidlich, along with Detective Bisceglia, advised Sweeney of his Miranda rights.  When asked if he understood his rights, Sweeney responded in the affirmative.  Agent Weidlich asked Sweeney to sign a form acknowledging that he understood his rights and that he was willing to be questioned without a lawyer present.  When Sweeney told the officers that he did not have his glasses, Detective Bisceglia offered to suspend the questioning to get Sweeney's glasses, but Sweeney declined.  Agent Weidlich offered to read through the form again, but Sweeney again rejected the offer and signed the Miranda acknowledgment form.

After about ten minutes of the interview, the agents began to ask Sweeney about his email accounts.  Sweeney explained, "I'm trying to keep myself -- I don't want to dig a hole.  I need to speak to a lawyer."  Agent Weidlich told Sweeney, "it's certainly your right to talk to a lawyer, so if, we're, you want to be done here, we're done."  Sweeney then made another statement about digging himself into a hole, and Bisceglia stated, "[s]o, are you asking for a lawyer."  Sweeney asked, "[d]o I need a lawyer?"  Agent Weidlich explained that they could not answer that

---

[4] Agent Weidlich testified that she did not include Sweeney's statement, as to his computer ownership, in her report because "[i]t didn't seem overly significant at the time, and it was a statement that was made -- he wasn't asked a question."

question and Bisceglia offered Sweeney some time to think about it. The officers left the room and when they returned, Sweeney stated, "I'm screwed. I need a lawyer" and said nothing else. At which point, the interview ended. The entire encounter at the police station was videotaped.

On appeal, Sweeney renews his challenge as to the district court's decision denying his motion to suppress these statements. Sweeney argues that (1) his statements made to police during his arrest were un-Mirandized and therefore involuntary; (2) he did not knowingly waive his Miranda rights; and (3) the police continued to question him after he requested counsel. Again, this Court reviews the district court's legal conclusions as to a decision to deny a motion to suppress de novo, and its factual findings for clear error. See Crooker, 688 F.3d at 6.

*i. Statements Made During Arrest*

Defendant maintains that his un-Mirandized statement, "I don't even own a computer," should be suppressed because it was made during an interrogation in violation of his Miranda rights. Pursuant to Miranda v. Arizona, 384 U.S. 436, 444 (1966), "the prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."

All parties acknowledge that Defendant was not Mirandized when he was first arrested at his home. Therefore, the only question on appeal is whether Defendant was being interrogated because <u>Miranda</u> is only applicable during a custodial interrogation. See <u>Rhode Island</u> v. <u>Innis</u>, 446 U.S. 291, 300 (1980) ("It is clear therefore that the special procedural safeguards outlined in <u>Miranda</u> are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation.").

The district court correctly found that Defendant's statement, "I don't even own a computer," was not the product of an interrogation. Defendant asked the arresting officer a question, and the officer responded. The officer's comment did not require a response. As the district court explained, "Mr. Sweeney initiated the conversation by asking what he was being charged with and gratuitously responding." See <u>United States</u> v. <u>Conley</u>, 156 F.3d 78, 83 (1st Cir. 1998) ("A law enforcement officer's mere description of the evidence and of potential charges against a suspect, in direct response to the suspect's importuning, hardly can be classified as interrogatory.").

*ii. Voluntary Waiver*

Defendant also argues that the statements he made during the police interview at the station house should have been suppressed, as his Miranda waiver was involuntary and unknowing

because he could not read the waiver form without his glasses. In determining whether a waiver is knowing and intelligent, the Court considers:

> whether the government demonstrated by a preponderance of the evidence, . . . that [Defendant's] waiver and consent were both "voluntary in that [they] were the product of a free and deliberate choice rather than intimidation, coercion and deception" and also made with "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon."

United States v. Rosario-Diaz, 202 F.3d 54, 69 (1st Cir. 2000) (quoting Moran v. Burbine, 475 U.S. 412, 420 (1986) (second alteration in original)).

Viewing the totality of the circumstances particular to this case, we cannot conclude that the district court incorrectly determined that Sweeney's waiver and consent were knowing and intelligent and made voluntarily. As the government explains on appeal, the Defendant does not claim that he did not understand his rights or that he did not know what rights he was waiving. Sweeney's only issue on appeal is that he did not have his glasses and thus, he could not read the form. The district court noted that Defendant was asked if he wanted to stop to get his glasses or if he wanted the officer to re-read him the form, but he declined both offers. Finally, at the suppression hearing before the district court, Sweeney testified that in the past, he had been arrested, read his Miranda rights, understood them, and had invoked

his right to remain silent.  We therefore affirm the district court's decision on this issue.

*iii. Defendant's Request for Counsel*

Finally defendant maintains that his interview statements should be suppressed because the officers continued to question him even after he requested counsel.  It is understood that "[i]mmediately after a suspect has invoked the right to counsel, all questioning must cease until such counsel is provided."  United States v. Oquendo-Rivas, 750 F.3d 12, 18 (1st Cir. 2014) (citing Edwards v. Arizona, 451 U.S. 477, 485 (1981)).  However, "[i]nvocation of the Miranda right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney."  Davis v. United States, 512 U.S. 452, 459 (1994) (internal quotation marks omitted).  "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning."  Id. (emphasis in original); see also Obershaw v. Lanman, 453 F.3d 56, 64 (1st Cir. 2006) (explaining that "[t]he test is an objective one").

The district court was correct in concluding that until Defendant stated, "I'm screwed.  I need a lawyer," he had not

unambiguously requested counsel.  See Oquendo-Rivas, 750 F.3d at 19.  The district court observed the videotaped interview in which Defendant was skirting around the issue of representation.  When Sweeney stated that he needed to speak to a lawyer to avoid "dig[ging] a hole" for himself, Agent Weidlich immediately offered to end the interrogation.  Nonetheless, Sweeney continued to talk, unprompted, thus creating ambiguity as to whether he was invoking his right to counsel.  Further, when Agent Bisceglia asked Sweeney to clarify whether he was requesting counsel, Sweeney asked, "[d]o I need a lawyer?", making his statements about counsel even more ambiguous.  However, as soon as Defendant unambiguously stated, "I need a lawyer," the agents immediately stopped the interview.

For these reasons, we affirm the district court's decision denying Defendant's motion to suppress the statements.

## C. Evidence Admitted under Fed. R. Evid. 414(a)

Prior to trial, the government moved to admit two pieces of evidence pursuant to Fed. R. Evid. 414(a), which allows for propensity evidence in child pornography cases.  The first piece of evidence offered by the government revealed that in 1995, Sweeney had pleaded guilty to two counts of indecent assault and battery on two boys, ages nine and twelve.  The other evidence was the thumbnail images taken off the laptop found in Sweeney's residence, depicting images of what appeared to be young boys, between the ages of eight to fifteen, engaged in sexual activity.

Over Defendant's objection, the district court granted the government's motion to admit the evidence.[5] In order to avoid live testimony before the jury on the topic, Sweeney stipulated to this conviction.[6] Directly after the stipulation was read, the district court offered the following cautionary instructions as to the prior conviction:

> Ladies and gentlemen, let me -- I just want to give you a cautionary instruction at this point. The parties, . . . have stipulated that a 1995 guilty plea of the defendant for indecent assault and battery on a minor under the age of 14 years old may be admitted into evidence. This is being admitted into evidence for a very limited purpose, namely, on the issue of whether or not the defendant had a propensity []or an inclination to behave in a particular way. The government also offers this evidence in furtherance of their efforts to identify the defendant as irishrebble. I want to strongly caution that you are to consider this evidence only for these limited purposes. . . . I also want to remind you that Mr. Sweeney is on trial for the events of April 9th, 2015, only, and that is the -- the so-called GigaTribe downloads, and he is not on trial for any other act, conduct, or offense not charged in the indictment.

---

[5] At trial, Sweeney renewed his objection, but the district court affirmed its earlier decision as to the admissibility of the evidence.

[6] The stipulation provided: "[D]efendant Neil Sweeney pled guilty in 1995 to the indecent assault and battery on a person under the age of 14 . . . . The parties further agree that, at the time of the defendant's conduct, the child referenced in [the] Indictment . . . was 12 years old; and the [other] child referenced in [the] Indictment . . . was nine years old."

As to the thumbnail images, the jury saw five of the images obtained from the laptop, and then heard testimony that the remaining images found on the laptop were similar in nature.

On appeal, Sweeney claims that the district court abused its discretion in admitting the government's evidence because it was unfairly prejudicial in violation of Fed. R. Evid. 403, and resulted in the jury making a decision based on emotion. The government claims, as it did at trial, that under Rule 414, the evidence was admissible for both its propensity value, and for identity purposes, to show that Defendant was in fact GigaTribe user irishrebble.

This Court reviews a district court's evidentiary rulings for abuse of discretion, reversing only if the Court is "left with a definite and firm conviction that the court made a clear error of judgment." United States v. Joubert, 778 F.3d 247, 253 (1st Cir. 2015) (internal quotation marks omitted). The Court "give[s] great deference to a district [court's] balancing of probative value versus unfair prejudice." United States v. Breton, 740 F.3d 1, 14 (1st Cir. 2014).

"Evidence is admissible only if relevant, probative, and not unfairly prejudicial." United States v. Jones, 748 F.3d 64, 69 (1st Cir. 2014); see Fed. R. Evid. 401, 402, 403. "[E]vidence of a defendant's other crimes . . . is typically inadmissible to show his propensity for crime;" however, Rule 414, "overrides the

- 14 -

ban on propensity inferences in a specific situation." Jones, 748 F.3d at 69. Under Fed. R. Evid. 414(a), "the court may admit evidence that the defendant committed any other child molestation" and this "evidence may be considered on any matter to which it is relevant."[7] Despite the permissions outlined in Fed. R. Evid. 414, Rule 414 evidence is still restricted by Fed. R. Evid. 403, which "lets a judge exclude relevant evidence if 'its probative value is substantially outweighed' by its unfairly prejudicial nature. Unfairly prejudicial means 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" Jones, 748 F.3d at 70 (quoting Fed. R. Evid. 403). While Rule 414 is subject to the balancing test of Rule 403, there is, at least in this Circuit, "no heightened or special test for evaluating the admission of Rule 414 evidence under Rule 403." United States v. Majeroni, 784 F.3d 72, 76 (1st Cir. 2015).

 i. *Evidence of Prior Assault*

In United States v. Majeroni, this Court explained that the district court did not abuse its discretion in admitting Rule 414 evidence where:

> [t]he evidence of prior possession of child pornography
> was in the form of a guilty plea, eliminating any risk
> of having the issue of prior conduct bloom into a trial
> within the trial . . . . The fact that the prior conduct

---

[7] As explained in Rule 414(d), child molestation is defined as "any conduct prohibited by 18 U.S.C. chapter 109A." Child molestation includes possession and distribution of child pornography, regardless of whether the conduct is charged.

- 15 -

was similar to the charged conduct enhanced its presumed probativeness. Nor does the fact that the prior conduct occurred over ten years before the charged conduct compel a different result. . . . And the court's controlled method of introducing the information, with a limiting instruction, speaks well of its carefully nuanced exercise of discretion.

784 F.3d at 76.

The same is true here. As in Majeroni, the parties introduced the prior conviction through a stipulation. Further, directly after the stipulation was read, the court read a limiting instruction to the jury, warning the jury that Sweeney was not on trial for his prior crimes. See also Jones, 748 F.3d at 71 (explaining that while Rule 414(a) evidence could result in an impassioned jury decision based on emotion or bias, the bias issue was resolved by the judge's limiting instructions).

Sweeney however contends that Majeroni is not applicable because unlike Majeroni, whose prior conviction involved almost identical conduct as the offense at issue, Sweeney's prior conviction is not similar to the charged offense. While the charged conduct may not be as similar as the conduct in Majeroni, the evidence does show Sweeney's propensity to favor boys in a certain age range. Sweeney himself made identity an important question in the trial because his defense was that he was not GigaTribe user irishrebble. In response, the government offered the Rule 414 evidence to show that Sweeney was interested in boys between the ages of eight and fifteen, i.e. the relevant ages of

- 16 -

the boys from his prior conviction. This was also the age of interest expressed by irishrebble during the GigaTribe chat between irishrebble and Agent Matthews in December 2014. As such, the propensity evidence tended to show that Sweeney was irishrebble, a man with an interest in young boys within a certain age range. See also Joubert, 778 F.3d at 254 (finding that the district court did not abuse its discretion in admitting Rule 414(a) evidence "where that testimony showed that the defendant sought a similar type of sexual gratification"). As we already stated, Rule 414(a) evidence is allowable for propensity purposes, and "on any matter to which it is relevant."[8] Jones, 748 F.3d at 69. Therefore, the district court did not abuse its discretion in admitting the evidence, as it was directly relevant to Defendant's propensity to commit the crime (i.e., his interest in young boys), as expressly allowed by Rule 414(a). While the evidence was surely prejudicial, we cannot find, under the deferential standard of review, that it was unfairly prejudicial such that it violated Fed. R. Evid. 403.

---

[8] Sweeney does not contend that the prior conviction falls outside the parameters of allowable evidence under Fed. R. Evid. 414(a), nor does Sweeney claim that Fed. R. Evid. 414(a) in any way violates his constitutional rights. The question on appeal is solely whether the evidence is allowable under Fed. R. Evid. 403.

*ii. Thumbnail Images*

Sweeney also appeals the district court's decision to admit the Rule 414(a) evidence of the thumbnail images found on the laptop in his residence.  Sweeney argues that (1) "[n]o expert testified that the images on the laptop were actual child pornography and not computer generated images"; and (2) coupled with his prior conviction, the images were highly prejudicial "in light of the fact that there was no GigaTribe software or images downloaded from GigaTribe found on the laptop computer" in Sweeney's bedroom.

Beyond the passing reference to the fact that no expert testified that the images were child pornography, Defendant fails to challenge whether the evidence was properly categorized as admissible Rule 414(a) evidence, and instead, focuses solely on the Rule 403 analysis.[9]  Further, Sweeney appears to concede in his brief that the images are in fact child pornography, as he refers to the content of the images as "prepubescent males." Therefore, we need not address this issue on appeal.

As to Sweeney's argument that the thumbnail images were unfairly prejudicial under Rule 403, we cannot find that the district court abused its discretion in allowing the evidence to

_____

[9] Before the district court, Sweeney claimed that the images were simply pornographic in nature.

- 18 -

be introduced.[10]  Defendant insinuates that because there was no direct evidence that he used the computer to access GigaTribe, the evidence should not have been allowed.  However, there is no direct evidence requirement tied to Rule 414(a).  Further, there was a significant amount of circumstantial evidence linking Sweeney to the GigaTribe account irishrebble.  Various social networking accounts associated with the Defendant used the same moniker as the GigaTribe user.  The numbers used in the password for GigaTribe user irishrebble corresponded to Sweeney's birthday.  Finally, the computer found in Sweeney's residence corresponded to the IP address used by GigaTribe user irishrebble on April 9, 2015.  The images of child pornography found on the computer located in Sweeney's residence depicting boys of the age group favored by GigaTribe user irishrebble served as additional circumstantial evidence by which the jury could infer that Sweeney was in fact the GigaTribe user irishrebble.[11]

---

[10] Prior to the admission of the images, the district court again reminded the jury about the limited purpose of the evidence. The court stated:

> Ladies and gentlemen, I just want to repeat the caution that I -- that I just gave you.  You are about to hear about and to see photographs of images on this Dell laptop that are alleged to be child pornography. . . . I want to strongly caution you to consider these -- this evidence for this limited purpose only.

[11] We acknowledge there was also evidence that could weigh against a finding that Sweeney was GigaTribe user irishrebble. Defendant tried to rebut the assertion that he used the laptop to access GigaTribe, and instead, claimed that someone else in the

D. Sufficiency of the Evidence: Aiding and Abetting

On appeal, Sweeney claims, as he did below, that the district court's decision to give the aiding and abetting instruction was in error. He also argues that the failure to include the option of a check box in the verdict slip as to whether the jury was convicting Defendant as an accomplice or principal was also in error. Finally, he claims that the government failed to meets its burden as to accomplice liability, such that there was insufficient evidence to result in a conviction.

Defendant failed to develop any argument worth considering as to the district court's failure to include a check box in the verdict slip. Therefore, that argument is waived on appeal. See Colón v. R.K. Grace & Co., 358 F.3d 1, 5 (1st Cir. 2003).

Next, Sweeney asserts that the instruction for aiding and abetting was improper because the government's theory of the case was that Defendant was the principal. "We review de novo a preserved objection to the trial court's decision to give a requested jury instruction." United States v. Whitney, 524 F.3d 134, 138 (1st Cir. 2008).

---

residence could have accessed the non-password protected router and used GigaTribe to share child pornography via username irishrebble. The fact that the jury credited the government's evidence over the Defendant's does not mean that the thumbnail images admitted into evidence under Rule 414 were unfairly prejudicial.

As this Court explained in United States v. Howard, 687 F.3d 13, 19 (1st Cir. 2012), "[Defendant]'s own theory of the case made the . . . aiding and abetting instruction[] appropriate." As in Howard, Sweeney attempted to shift the blame to another person who resided at 54 Elm Street. Sweeney tried to show that other people at the residence had access to computers that were not searched and that the router affiliated with the IP address used on April 9, 2015, was not password protected, such that any resident at the location could have accessed it. However, the government introduced evidence that showed that in order for anyone to access the GigaTribe account of irishrebble, they needed to use a password. That password, said the government, was Sweeney's and thus the jury could have inferred that Sweeney, by sharing his password with another user, aided and abetted a crime. In crafting jury instructions, the court "must consider all of the evidence introduced at trial, in other words, the government's as well as the defense's." Id. As such, the instruction was not improper.

Finally, we need not consider Defendant's claim that the government failed to meet its burden of proof as to accomplice liability on the alternative theory of the case because, as the government points out in its brief, "Sweeney does not dispute that the evidence was sufficient to convict him as a principal." "[A]iding and abetting 'is not a separate offense.'" United States v. Vázquez-Castro, 640 F.3d 19, 25 (1st Cir. 2011) (quoting United

- 21 -

States v. Sanchez, 917 F.2d 607, 611-12 (1st Cir. 1990)). "[W]hen a jury returns a general verdict of guilty on a single count charging more than one criminal act, the verdict stands if the evidence sufficiently supports any of the acts charged." United States v. Nieves-Burgos, 62 F.3d 431, 434 (1st Cir. 1995). In Nieves-Burgos, the government acknowledged "that there was insufficient evidence presented at trial to support the firearms conviction with respect to two of the three guns listed in the charge." Id. at 436. This Court explained, however, that pursuant to Supreme Court precedent in Griffin v. United States, 502 U.S. 46 (1991) and Turner v. United States, 396 U.S. 398, 420 (1970), the "verdict shall not be set aside on this basis alone. Rather, the verdict must stand so long as it is sufficiently supported by the evidence concerning the third firearm." Id.

The same is true here. Even if the evidence as to accomplice liability was not sufficient to support the verdict as to Sweeney being the accomplice, the verdict must stand unless the evidence is also insufficient as to the other theory of the case included in the general verdict, i.e. that Sweeney was the principal. "So long as all of the elements necessary to find [Defendant] guilty of the crime, whether as a principal or as aider or abetter, were put before the jury, conviction will be proper." United States v. Rashwan, 328 F.3d 160, 165 (4th Cir. 2003). Therefore, we affirm the conviction.

## E. Sentencing Challenge

At sentencing, the district court determined that based on the sentencing guidelines, before adjusting for statutory maximums, Defendant's guideline range was life in prison. In imposing the sentence, the district court considered the statutory minimum and maximum sentences as to both counts, fifteen years minimum and forty years maximum for Count I, pursuant to 18 U.S.C. § 2252A(a)(2), and ten years minimum and twenty years maximum as to Count II, pursuant to 18 U.S.C. § 2252A(a)(5)(b), and imposed a below the guideline sentence of 204 months incarceration (seventeen years). The district court explained that the sentence "represents a balance between the Defendant's repeated conduct and ongoing threat to the community."

On appeal, Defendant claims that his sentence violated his Due Process rights under the Constitution and was overly harsh. In support of this general assertion, he cites to several articles discussing the increase in prison sentences for child pornography offenders. Defendant claims that his sentence creates a "severe discrepancy" for the convicted charge.

### i. Constitutional Challenge

"We review this claim de novo because it turns on an abstract legal proposition." United States v. Blodgett, 872 F.3d 66, 69 (1st Cir. 2017). "Once a person has been convicted, . . . any punishment prescribed is consistent with the Due Process Clause

as long as Congress had a rational basis for its choice of penalties and the particular penalty imposed is not based on an arbitrary distinction." Id. (internal quotation marks omitted).

Defendant appears to challenge both the application of the statutory minimum sentencing requirement and the calculation of his sentencing guideline range based on the enhancements. Pursuant to 18 U.S.C. § 2252A(b)(1), Sweeney is subject to the mandatory minimum sentence of fifteen years based on his prior conviction of indecent assault and battery on a person under fourteen years of age. In Blodgett, the Court addressed a constitutional due process challenge to the mandatory minimum sentence imposed pursuant to Section 2252(A)(b)(2) and explained that the legislative history of the statute provides a basis to conclude that Congress created a rational sentencing scheme. Id. at 71. While Sweeney's mandatory minimum sentence is derivative of section 18 U.S.C. § 2252A(b)(1), as compared to (b)(2), the Court's determination in Blodgett as to the constitutional scheme of the section is nonetheless applicable. As such, Defendant's constitutional challenge cannot pass muster.

As to Defendant's contention that his sentence is unconstitutional because it relies on enhancements that are "duplicative," it is entirely unclear if he is making a constitutional challenge to the sentence or a procedural one. Regardless, "[w]e have said before . . . that [d]ouble counting in

the sentencing context is a phenomenon that is less sinister than the name implies." United States v. Chiaradio, 684 F.3d 265, 282–83 (1st Cir. 2012) (second alteration in original) (internal citations and quotation marks omitted). "The Sentencing Commission has shown itself fully capable of expressly forbidding double counting under the guidelines when appropriate," id., but there is nothing in the guidelines that prohibits double counting as to the enhancements used here. Nor does Defendant cite to any cases in this Circuit that challenge the validity of these enhancements. See id. ("We regard it as settled that when neither an explicit prohibition against double counting nor a compelling basis for implying such a prohibition exists, courts should be reluctant to read in a prohibition where there is none." (internal quotation marks omitted)).

Finally, Defendant's assertion that his sentence is overly harsh fails to sufficiently present an argument that merits review of the reasonableness of his sentence.

**III. Conclusion**

For these reasons, we affirm the conviction of the Defendant and the sentence imposed by the district court.